CLARK v COATS & SUITS UNLIMITED

Docket No. 70581. Submitted April 4, 1984, at Detroit.—Decided June 4, 1984.

Gary D. Clark brought an action in Oakland Circuit Court against Coats & Suits Unlimited, Theodore Goldsmith, Howard Goldsmith and Joel Hirsch for specific performance of the provisions of an employment contract and for damages arising out of the breach of that contract. Plaintiff alleged that he relied upon an agreement with the individual defendants that plaintiff would receive an ownership interest in the proposed apparel business if plaintiff would manage the operation which eventually was incorporated as the corporate defendant. Plaintiff, in early 1980, left his employment as a buyer for a Wisconsin department store, moved to the Detroit area, set up the retail operation, and managed that operation until he quit in October, 1982. Plaintiff alleged that the individual defendants failed to transfer to him the 20% ownership interest at the beginning of the second fiscal·year in accordance with the original employment agreement and that they sought to have plaintiff agree to a new proposed stockholder's agreement. In October, 1982, after being unable to satisfactorily resolve the dispute with the individual defendants, plaintiff terminated his employment with the corporate defendant, giving up his positions as president and corporate director. The first count of plaintiff's complaint was based on a violation of his stockholder's rights, the second count was based on the breach of the

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 73 Am Jur 2d, Statute of Frauds §§ 594, 602.

[4] 72 Am Jur 2d, Statute of Frauds § 357 et seq.

[5, 6] 17 Am Jur 2d, Contracts § 89.

28 Am Jur 2d, Estoppel and Waiver §§ 48, 49.

75 Am Jur 2d, Statute of Frauds § 565 et seq.

Promissory estoppel as basis for avoidance of statute of frauds. 56 ALR3d 1037.

[6] 53 Am Jur 2d, Master and Servant § 15.

Action by employer in reliance on employment contract which violates statute of frauds as rendering contract enforceable. 54 ALR3d 715.

[7] 73 Am Jur 2d, Statute of Frauds §§ 444, 447, 552.

agreement to transfer the 20% stock interest, and the third count was based on fraud and misrepresentation. In support of his allegations, plaintiff submitted a document which, under the typewritten name of Ted Goldsmith, set forth plaintiff's salary for the first four years of the store's operation and indicated a 20% ownership interest for plaintiff in the second year which would increase to 25% in the fourth year. This memorandum was allegedly received by plaintiff in January, 1980. Defendants denied knowledge of the document and moved for accelerated judgment on the basis of the statute of frauds, arguing that the employment agreement could not be performed within one year of its making and that there was no signed writing within the meaning of the statute of frauds. The trial court, Alice L. Gilbert, J., granted defendants' motion for accelerated judgment as to the first two counts, holding that the typed name of Goldsmith on the alleged memorandum would not satisfy the statutory requirement of a "signed writing" and that neither the doctrine of equitable estoppel or partial performance took the matter outside the scope of the statute of frauds. Following a denial of plaintiff's motion for a rehearing, the court ordered entry of a final judgment dismissing the first two counts. Plaintiff appealed. *Held:*

1. A typewritten name on a memorandum will satisfy the signed writing requirement of the statute of frauds if the person typing his or her name had the then-present intention to authenticate the writing. Since for purposes of a motion for accelerated judgment the court must accept as true all the well-pleaded facts of the nonmoving party and must avoid engaging in any fact-finding, and since there was a factual dispute relative to the alleged memorandum, the trial court erred in granting the motion for accelerated judgment, and thereby engaging in fact-finding as to the nature and intent of the memorandum.

2. Even if plaintiff is not able to establish that the memorandum is, as a matter of fact, a signed writing within the meaning of the statute of frauds, there were sufficient facts pled which, if proved, would establish equitable estoppel such as would preclude the use of the defense of the statute of frauds. The trial court erred in deciding these factual issues relating to the question of the applicability of the doctrine of equitable estoppel.

3. The doctrine of partial performance may not be used to avoid the consequences of the operation of the statute of frauds in an action based on an employment contract.

4. Even if the agreement is found to be insufficient to satisfy

the requirements of the statute of frauds such that the plaintiff is unable to seek specific performance of the provisions of the agreement, plaintiff may recover under *quantum meruit* the value of the services he has already rendered, and the agreement may still be admissible if it is helpful in deciding the question of the value of those services.

Reversed and remanded.

1. JUDGMENTS — ACCELERATED JUDGMENT — FRAUDS, STATUTE OF.

The defense that a claim is barred by the application of the statute of frauds may be raised by means of a motion for accelerated judgment (GCR 1963, 116.1[5]).

2. JUDGMENTS — ACCELERATED JUDGMENT — PLEADINGS.

A court must accept well-pleaded facts of the nonmoving party as true for purposes of a motion for accelerated judgment.

3. JUDGMENTS — ACCELERATED JUDGMENT — APPEAL — FACT-FINDING.

A motion for accelerated judgment is proper only if no material factual dispute exists between the parties; reversal of an accelerated judgment is required where the court, in ruling on the motion, engaged in fact-finding.

4. CONTRACTS — FRAUDS, STATUTE OF — SIGNED WRITING — TYPEWRITTEN NAME — ACCELERATED JUDGMENT.

The requirement of the statute of frauds that a contract, agreement, or promise which cannot be performed within one year is void unless there is a memorandum of the contract, agreement or promise signed by the party charged or a person authorized by him may be satisfied by a typewritten name where the party typing his or her name does so with the then-present intention to authenticate the writing; a motion for accelerated judgment based on the statute of frauds is not appropriately granted where the nonmoving party offers in response to the motion a memorandum containing a typewritten name of the moving party and asserts that the typewritten name satisfied the signed writing provision of the statute of frauds and the moving party denies signing the same, since under such circumstances there exists a disputed question of fact which is for the trier of fact and which should not be resolved by the court in its consideration of the motion for accelerated judgment (MCL 440.1201[39], 566.132; MSA 19.1201[39], 26.922; GCR 1963, 116.1[5], 116.3).

5. ESTOPPEL — PROMISSORY ESTOPPEL — FRAUDS, STATUTE OF.

The elements of promissory estoppel are: (1) a promise, (2) that

the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided; promissory estoppel, if established, can be invoked to defeat the defense of the statute of frauds (MCL 566.132; MSA 26.922).

6. FRAUDS, STATUTE OF — PARTIAL PERFORMANCE — EMPLOYMENT CONTRACTS.

The doctrine of partial performance may not be used to avoid the consequences of the operation of the Statute of Frauds in actions based on employment contracts.

7. CONTRACTS — EMPLOYMENT CONTRACTS — FRAUDS, STATUTE OF — QUANTUM MERUIT — EVIDENCE.

An employment agreement which is not enforceable by reason of the operation of the statute of frauds may still be admissible into evidence for the purpose of aiding in the determination of the value of the services already performed on the employee's claims based on the theory of quantum meruit even though the employee has no right to seek specific performance of the provisions of the void agreement.

*Giarmarco & Marzella* (by *Neil Marzella)*, for plaintiff.

*Leopold, Geller, Denja & Fayne* (by *Robert P. Geller)*, for defendants.

Before: ALLEN, P.J., and V. J. BRENNAN and R. M. DANIELS,* JJ.

V. J. BRENNAN, J. Plaintiff appeals as of right from an order of accelerated judgment, GCR 1963, 116.1(5), dismissing Counts I and II of his complaint on the ground that the statute of frauds, MCL 566.132(a); MSA 26.922(a), barred plaintiff's claims.

In 1979, the parties first met and began discussing the possibility of opening a women's apparel

* Circuit judge, sitting on the Court of Appeals by assignment.

discount operation in Michigan. The individual defendants reside in New York City and are affiliated with Bromley Coats of New York. When the parties met, plaintiff was a coat buyer with the H. C. Prang Department Store in Green Bay, Wisconsin. Because plaintiff had expressed to defendants a desire in obtaining new employment, defendants offered plaintiff the managerial position of the proposed store in Michigan.

Plaintiff claims that during the first part of 1980 the following agreement in the form of a typewritten memorandum was reached by the parties: plaintiff and his wife would move to the Detroit area; plaintiff would operate a retail clothing store under the name of Coats Unlimited; during the first year, commencing on or about August 1, 1980, plaintiff would be paid a salary of $40,000 and also 10% of the first year's profits of the business; at the beginning of the second year, on or about August 1, 1981, 20% ownership of the business would be transferred to plaintiff and plaintiff would share in the surplus profits of the business at that percentage rate in both the second and third years of operation; and, at the beginning of the fourth year of operation, on or about August 1, 1983, an additional 5% ownership interest in the business would be transferred to plaintiff.

Defendants allege that there was no writing executed by the parties. According to defendants, plaintiff accepted defendants' recommended $40,-000 annual salary for the first year and defendants agreed to grant plaintiff a bonus at the end of the first year of employment. Furthermore, if plaintiff performed satisfactorily in his first year, defendants would give plaintiff the opportunity to acquire a 10% equity interest in the compnay at the beginning of the second year.

In February, 1980, plaintiff travelled to Detroit and selected a location for the first retail store of the proposed business. Thereafter, plaintiff terminated his employment with H. C. Prang, and he and his family moved to the Detroit area to establish the clothing store.

According to plaintiff, in May, 1980, the parties decided to incorporate the business, naming it Coats & Suits Unlimited. Plaintiff was elected a corporate director and president of the newly formed Michigan corporation. July 31 was selected as the corporation fiscal year end. The new business had its grand opening sometime in July, 1980.

At the close of the first fiscal year, July 31, 1981, plaintiff received a $10,000 bonus and he had also received his $40,000 salary during the course of the year. It was alleged by plaintiff that the business was a tremendous financial success and had made more money than originally anticipated by any of the parties.

According to plaintiff, between January, 1980, and August 1, 1981, defendants continually reiterated their promise to plaintiff that they would transfer 20% of the business to him in accordance with the original agreement between the parties. After August 1, 1981, plaintiff began to inquire about when he was to receive his stock certificates showing his 20% interest in Coats & Suits Unlimited. Defendants were noncommittal, but told plaintiff that, upon the opening of a second retail store in the Troy, Michigan area, they would pursue the matter.

It is defendants' position that during plaintiff's second year of employment the parties discussed a prospective stock transfer to plaintiff representing 10% of the equity in the corporation, but defendants indicated that they would first review plain-

tiff's performance before committing to the issue of any stock.

On or about January 22, 1982, plaintiff received a letter from defendants' New York attorneys regarding a proposed stockholder's agreement. The letter stated that the stockholder's agreement "will replace the August 1, 1980, agreement". The proposed stockholder's agreement lists the plaintiff as a 10% owner of the 30 shares of common stock issued by the corporation, and establishes 300 shares of preferred stock to be owned by the three individual defendants, respectively. Plaintiff rejected the proposed stockholder's agreement and the parties agreed to discuss plaintiff's concerns at a meeting planned to be held in New York City in April, 1982.

At the April, 1982 meeting, plaintiff again requested to receive his stock certificates. Defendants then indicated to plaintiff that they were not happy with his performance at the store and, according to plaintiff, defendants were considering the idea of not issuing him his ownership interest in the business. According to defendants, plaintiff was informed that there would be no stock issuance before the end of the second fiscal year, at which time plaintiff's performance would be reevaluated. Nevertheless, plaintiff claims that he was told that he would receive 20% of the net profits of the business, but defendants were going to hold off the stock transfer. In May, 1982, plaintiff notified defendants of his intention to resign his various positions with Coats & Suits Unlimited. Plaintiff officially resigned as an employee, officer, and director of the corporate defendant on October 14, 1982.

On October 23, 1982, defendants inventoried the corporate defendant's merchandise. Previously, the

store experienced an average of less than $6,000 worth of shortages. However, after plaintiff left the store, defendants claimed that it experienced a $94,000 shortage. Based upon this, defendants filed a counter-complaint against plaintiff in this suit.

On November 10, 1982, plaintiff commenced the instant action against the corporate defendant and against the individual defendants, jointly and severally. Count I of plaintiff's complaint was based upon a violation of his stockholder rights; Count II was based upon defendants' breach of an agreement to transfer a 20% stock ownership interest in the corporate defendant to plaintiff; and Count III was based upon defendants' misrepresentations to plaintiff regarding their offer to transfer a 20% stock ownership interest in the defendant corporation to him if he operated the defendant corporation for defendants.

On January 19, 1983, defendants filed a motion for accelerated judgment pursuant to GCR 1963, 116.1(5) against Counts I and II of plaintiff's complaint, based upon the statute of frauds. Oral arguments on defendants' motion were heard by the trial court on February 2, 1983. Ruling from the bench, the trial court granted defendants' motion. In making its ruling, the trial court said that the statute of frauds defeats plaintiff's claims that an agreement existed between the parties regarding plaintiff's entitlement to a 20% stock ownership interest in the defendant corporation, because the alleged agreement could not be performed in less than a year. Furthermore, the trial court stated that the case could not be taken out of the statute of frauds based upon a theory of promissory estoppel.

On February 24, 1983, plaintiff filed a motion and affidavit requesting the trial court to recon-

sider its ruling from the bench. A hearing on plaintiff's motion was conducted by the trial court on March 23, 1983. On March 24, 1983, the trial court issued its order granting defendants' motion for accelerated judgment against Counts I and II of plaintiff's complaint and it issued its order denying plaintiff's request to reconsider its ruling.

The issue for our determination is whether the trial court properly granted defendants' motion for accelerated judgment under the facts of this case.

Plaintiff alleged that he had an agreement with defendants that he would leave his buyer's position with H. C. Prang Department Store in Green Bay, Wisconsin, and establish a store for defendants in the Detroit area in exchange for a $40,000 salary plus a 20% ownership interest in the proposed clothing store. Plaintiff attached to his complaint a memorandum which had allegedly been sent to him from Ted Goldsmith, detailing the terms of the parties' agreement. On appeal, plaintiff challenges the trial court's decision to grant defendants' motion for accelerated judgment on the following grounds: first, that defendants' typewritten names listed in the memorandum attached to his complaint could properly satisfy the signature requirement of the statute of frauds; secondly, that the agreement between the parties could be performed within one year; and, finally, that, if the memorandum is found not to satisfy the requirements of the statute of frauds, the agreement could still be removed from the operation of the statute of frauds by reason of either the doctrine of promissory estoppel or the doctrine of partial performance.

Under GCR 1963, 116.1(5), a party may raise the statute of frauds so as to defeat a claim based upon an alleged agreement which cannot be per-

formed within a year and which is not evidenced by a writing signed by the party to be charged therewith. MCL 566.132(a); MSA 26.922(a). In reviewing such an affirmative defense under this motion, the trial court must accept all well-pled allegations of the nonmoving party as true. *Robards v Estate of Leopold J Kantzler,* 98 Mich App 414, 416; 296 NW2d 265 (1980); *Empire Shoe Service, Inc v Gershenson,* 62 Mich App 221, 223-224; 233 NW2d 237 (1975). Where factual issues exist which might remove the alleged agreement from the operation of the statute of frauds *(e.g.,* promissory estoppel or the doctrine of partial performance), it is improper to grant a motion brought pursuant to GCR 1963, 116.1(5). And, if a reviewing court determines that the lower court performed some fact-finding in granting such a motion, the reviewing court will reverse. *Kropff v City of Monroe,* 128 Mich App 450, 452; 340 NW2d 119 (1983); *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981); *Baker v Detroit,* 73 Mich App 67, 72; 250 NW2d 543 (1976).

Plaintiff argues that the memorandum attached to his complaint satisfies the requirements of the statute of frauds. He contends that it certainly is a writing and that the typewritten names listed on the document may properly represent signatures of the defendants, who are the parties to be charged in this case.

MCL 566.132; MSA 26.922 provides in pertinent part as follows:

"In the following cases an agreement, contract or promise shall be void, unless that agreement, contract, or promise, or a note or memorandum thereof is in writing and signed by the party to be charged therewith, or by a person authorized by him:

"(a) An agreement that, by its terms, is not to be performed within 1 year from the making thereof."

The trial court believed that the memorandum was not signed by a party to be charged or by any "identification of authentication by the party to be charged". Plaintiff argues that a "typewritten name will satisfy the requirement of a signing". In our opinion, the issue herein is one of fact. See, generally, 2 Corbin, Contracts, § 522, pp 768-769, where it is explained that a typewritten name may satisfy the signature requirement of the statute of frauds as long as the party typing his or her name intends to authenticate same. *Cf.* MCL 440.1201(39); MSA 19.1201(39) ("'signed' includes *any symbol* executed or adopted by a party *with present intention to authenticate a writing"* [Emphasis supplied.]).

In this case, plaintiff claimed that defendants signed the memorandum. Defendants, however, denied signing the memorandum and, moreover, denied ever seeing the document before the commencement of this case against them. Such a fact should not be tried by affidavits, especially where, as here, a jury demand has been entered by plaintiff. GCR 1963, 116.3.

The memorandum purports to be "From Ted Goldsmith". As stated by Professor Corbin, the manner and means used to inscribe the signature are a "question of intention to authenticate". Corbin, *supra,* p 768. Plaintiff, therefore, should be permitted to present evidence to show that Ted Goldsmith sent plaintiff the memorandum and that Ted Goldsmith intended to authenticate the document when sent, thus satisfying the signature requirement of the statute of frauds. Furthermore, if it can be shown that Ted Goldsmith sent

plaintiff the memorandum and he intended to authenticate such, a question of fact remains on the issue of whether or not Ted Goldsmith signed the memorandum in his individual capacity, as an agent of the remaining defendants, or both. Because several questions of fact exist, it is our opinion that the trial court improperly granted accelerated judgment on the ground that the memorandum did not satisfy the writing requirement of the statute of frauds. Thus, we find it necessary to reverse the court's order and remand for trial on this issue.

We also find it necessary to address the question of whether or not equitable or promissory estoppel applies to the factual situation before us. In the event that plaintiff cannot show that the memorandum satisfies the statute of frauds, it is our opinion that plaintiff can proceed on the alternative theory of estoppel because factual issues do exist to support this theory.

It is well settled that promissory estoppel, if established, can be invoked to defeat the defense of the statute of frauds. See, *e.g., McMath v Ford Motor Co,* 77 Mich App 721, 725; 259 NW2d 140 (1977).

The elements of equitable or promissory estoppel are: (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) under such circumstances that the promise must be enforced if injustice is to be avoided. *Schipani v Ford Motor Co, supra,* pp 612-613; *McMath v Ford Motor Co, supra,* p 725.

Defendants, as the promisors, offered plaintiff a salary of $40,000 plus a 20% ownership interest in

the subject business if plaintiff would leave his job as a buyer with the H. C. Prang Department Store in Green Bay, Wisconsin, and establish a clothing store in the Detroit area on defendants' behalf.

As a buyer, plaintiff had been receiving $25,000 annually. Accordingly, if it is true that plaintiff was to receive an annual increase in pay of $15,-000 plus a 20% ownership interest in the business, one could say that this promise should reasonably have induced action on plaintiff's part to accept defendants' offer. Plaintiff left his former employment as a buyer with the H. C. Prang store, moved himself and his family to the Detroit area, set up and then, subsequently, ran defendants' clothing store, hence it is reasonable to believe that, in fact, the promise "produced reliance" on plaintiff's part. And, finally, if these facts as alleged are found by the trier of facts to be true, the circumstances under which they occurred are such that "the promise must be enforced if injustice is to be avoided". Thus, we conclude that the trial court erroneously decided these factual issues on its own.

Plaintiff also argues that he should be permitted to recover damages against defendants on a theory based upon the doctrine of partial performance, citing *Ordon v Johnson,* 346 Mich 38; 77 NW2d 377 (1956). In reviewing plaintiff's argument, it is evident that he misunderstands the basis of recovery in *Ordon, supra.* Generally, the doctrine of partial performance is not applied to employment contracts. *Whipple v Parker,* 29 Mich 369, 374-375 (1874); *Schipani v Ford Motor Co, supra,* p 612; *McMath v Ford Motor Co, supra,* p 725.

Nevertheless, plaintiff may recover the *value* of his services devoted to defendants' business under a theory of *quantum meruit.* In doing so, if it is

found that the alleged agreement is void under the statute of frauds, it may still be admissible if helpful in estimating plaintiff's damages. *Ordon, supra,* pp 48-49. Accordingly, plaintiff should also be permitted to prove his case under a theory of *quantum meruit.* However, the bench and bar should understand that plaintiff may not seek nor obtain specific performance; *i.e.,* he may not recover the stock which he allegedly bargained for in this case. He may simply obtain the *value* of this stock, if, by proper proofs, he can show that it is the proper estimate of his damages. *Ordon, supra,* pp 48-49.

Reversed and remanded for proceedings consistent with this opinion.