NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0440n.06

Case No. 14-1661

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 11, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CAROLYN A. TROMBLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| SETERUS INC., F/K/A IBM LENDER | ) | THE EASTERN DISTRICT OF |
| BUSINESS PROCESS SERVICES, INC.; | ) | MICHIGAN |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION, | ) | OPINION |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:  McKEAGUE and DONALD, Circuit Judges; and MATTICE, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge**.  This diversity case concerns a dispute over whether a mortgage loan modification ripened into an enforceable contract.  The district court dismissed Plaintiff-Appellant Carolyn A. Trombley's Complaint for failure to state a claim for breach of contract, promissory estoppel, and quiet title, because the purported underlying contract was barred by Michigan's statute of frauds, codified at M.C.L. § 566.132(2).  For the reasons stated herein, we **AFFIRM** the district court's dismissal of Trombley's Complaint.

---

[*]The Honorable Harry S. Mattice, Jr., United States District Judge for the Eastern District of Tennessee, sitting by designation.

I.

On August 11, 2003, Carolyn A. Trombley ("Appellant" or "Trombley") and her ex-husband Clifford Trombley jointly refinanced their mortgage loan in the amount of $191,400.00 using their residence on 30 Mile Road in Lenox Township, Michigan as collateral. The mortgage was assigned to Defendant-Appellee Federal National Mortgage Association ("Fannie Mae") and serviced by Defendant-Appellee Seterus, Inc., formerly known as Lender Business Process Services, Inc. ("Seterus") (collectively "Appellees").

In September 2008, Trombley was awarded the home pursuant to a divorce judgment that granted her sole interest in the property but continued to obligate Clifford Trombley to Fannie Mae on the mortgage. The divorce judgment specifically called for removing Clifford Trombley from the mortgage by requiring him to execute a quit-claim deed to be held in escrow until Trombley sold or refinanced the property, which she was required to do within five years. There was no quit-claim deed, sale, or refinancing, and the judgment was never recorded.

Having difficulty making mortgage payments on her own, Trombley applied for a loan modification. On October 6, 2010, Seterus offered Trombley and her ex-husband, who remained joint-obligors on the mortgage, a trial period loan modification ("Trial") pursuant to the Home Affordable Modification Program ("HAMP"). Successful completion of the Trial would lead to a permanent loan modification. Trombley satisfied the Trial by making three payments of $984.07 each by November 1 2010, December 1, 2010, and January 1, 2011.

On January 30, 2011, Seterus sent Trombley and her ex-husband another jointly-addressed correspondence. This packet contained a permanent loan modification agreement ("Modification") styled as an "offer" and included a cover letter with instructions on how to accept the offer. The letter stated that the Modification reflected the "proposed terms of your

modified mortgage." PageID 213. The letter also stated that "[t]o accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by February 28, 2011." *Id.* The cover letter, similar to previous correspondence from Seterus, was issued on company letterhead and bore at the end of the page: "Sincerely, IBM Lender Business Process Services, Inc." PageID 224; 208. On February 10, 2011, Trombley returned the proposed modification agreement to Seterus with her signature. Four days later, on February 14, 2011, Clifford Trombley received a Chapter 7 bankruptcy discharge of his mortgage loan obligations to Appellees. In March 2011, he was removed from the loan records.

On June 21, 2011, Seterus sent Trombley a letter rejecting the Modification and mistakenly claiming she did not make the required payments under the Trial. Trombley successfully challenged the June 21, 2011, rejection and on August 16, 2011, Seterus sent a second proposal for a loan modification agreement ("Second Modification"), this time addressed solely to Trombley. Trombley did not accept the Second Modification. On October 19, 2011, Seterus sent Trombley a letter again rejecting the initial Modification, but this time for the reason that it lacked Clifford Trombley's signature.

In the meantime, Trombley had been sending in "her modified mortgage payments," as though the initial Modification had gone into effect. Appellant's Br. at 8. Considering Trombley to be in default of her mortgage payments, which had never been modified in Appellees' view, Appellees initiated foreclosure proceedings. The property was foreclosed upon and sold on January 12, 2012.

Before the redemption period expired on January 12, 2013, Trombley filed a Complaint against Appellees in state court on December 18, 2012, asserting claims of (1) breach of contract; (2) promissory estoppel; and (3) quiet title. On December 19, 2012, Trombley obtained

an ex parte temporary restraining order in state court tolling the expiration of the redemption period. Appellees timely removed the case to federal court on December 28, 2012, on the basis of diversity jurisdiction. On January 3, 2013, Trombley filed an emergency motion for a preliminary injunction. The motion was granted on February 7, 2013.

On January 14, 2014, Seterus and Fannie Mae filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting amongst others that (1) there was no contract (i.e. the Modification was not effective), and (2) Michigan's statute of frauds barred Trombley's breach of contract and promissory estoppel claims. On April 25, 2014, the district court granted the motion to dismiss on the latter basis, without discussing the former.[1] The district court's decision turned on the critical finding that the Modification was not signed by an authorized representative of Seterus, as required by the Michigan statute of frauds. In finding that the breach of contract and promissory estoppel claims were barred, the district court also dismissed Trombley's related claim to quiet title.

On May 23, 2014, Trombley timely appealed, challenging the district court's (1) interpretation of the Michigan statute of frauds, M.C.L. § 566.132(2); (2) analysis of Seterus' intent as an inappropriate factual inquiry under Rule 12(b)(6); and (3) dismissal of the quiet title claim.

II.

We review de novo a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6). *Lukas v. McPeak*, 730 F.3d 635, 637 (6th Cir. 2013). A complaint must "contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir.

---

[1] Upon the district court's dismissal, the preliminary injunction tolling the expiration of the redemption period was dissolved and Fannie Mae now owns the property in fee simple.

2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation" that Trombley will be able to factually support her claim. *Twombley*, 550 U.S. at 556.

"Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Therefore we apply Michigan law as articulated by the Michigan Supreme Court. *Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 670 (6th Cir. 2012). If the Michigan Supreme Court has not addressed an issue, we may look to the Michigan appellate courts and must follow their reasoning unless "convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.*

### III.

As an initial matter, we clarify that Trombley's breach of contract claim and Seterus' affirmative defense based on the statute of frauds are analytically distinct issues. *See Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 430 (6th Cir. 1992) ("[T]he questions of whether the writing satisfies the applicable statute of frauds and whether a valid offer has been accepted are two distinct issues."). As Appellees contend, Trombley's claims may fail because there was no meeting of the minds necessary for contract formation. Moreover, Trombley certified that there was no change in property ownership even though the divorce made her sole owner—though

unacknowledged, this may well be a material misrepresentation that renders the contract void or unenforceable. However, we need not reach these issues because, as the district court found, Trombley's claims would be barred by the Michigan statute of frauds. We review the district court's analysis of the Michigan statute of frauds and consider any questions of fact contained therein.

A.

Under Michigan's statute of frauds, a financial institution's promise regarding financial accommodation, like a loan modification, is void unless it is (1) in writing and (2) signed with an authorized signature by the party to be charged with the promise. M.C.L. § 566.132(2)(c).

Trombley argues that juries, not courts, should determine whether the phrase "Sincerely, IBM Lender Business Process Services, Inc." [2] in the closing of a cover letter satisfies the statute of frauds as to a binding mortgage contract because "the manner and means used to inscribe the signature are a 'question of intention to authenticate.'" Appellant's Br. at 28 (quoting *Clark v. Coats & Suits, Unlimited*, 352 N.W.2d 349, 354 (Mich. Ct. App. 1984) (citing 2 Corbin on Contracts, § 522, pp. 768-769); *Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 458 (Mich. Ct. App. 1989) ("[w]hether the party possessed the intent to authenticate is a question of fact.")); *see also Mich. Broad. Co. v. Shawd*, 90 N.W.2d 451, 453 n.1 (1958) ("[T]he ultimate question [concerning authentication] is one of fact as to the intention of the parties") (citing 1 Williston on Contracts, 3d ed., § 28, p. 68)).

But federal courts in our jurisdiction have consistently held that "whether a purported contract is barred by the statute of frauds is a matter of law to be decided by the court." *Omnipoint Holdings, Inc. v. City of Southfield*, 203 F. Supp. 2d 804, 816 (E.D. Mich. 2002)

---

[2] We presume that the phrase "Sincerely, IBM Lender Business Process Services, Inc" was intended as a "signature" of the cover letter by Seterus, and examine only whether Seterus also intended to be bound, by that signature, to the Modification which was enclosed with the cover letter.

(citing *Zander v. Ogihara Corp.*, 540 N.W.2d 702, 704 (Mich. Ct. App. 1995)).  In this case, we believe the two can be reconciled because the factual inquiry is not triggered unless and until there is some plausible basis to believe Trombley's version of the parties' intention.  Furthermore, Trombley's reliance on *Clark* and *Jim-Bob* is inapposite.  Those cases are factually distinguishable as neither involves mortgage contracts.  They also predate the revisions to the statute of frauds which enhance protections for financial institutions.

Even if a party's intention to authenticate is a question of fact, (2 A. Corbin, Corbin on Contracts § 520, at 762-63 (1950)), aside from Trombley's own assertions in this case, there is not any—much less enough—evidence in the record to support a finding of such an intention. *Twombly*, 550 U.S. at  556.  Given the clear and unambiguous terms of the Modification, even contract pundits Corbin and Williston would likely agree that we need not foray into the minds of the parties.  For example, the last page of the Modification contained a dedicated space for Seterus' signature.  The signature line on the Modification stated:

> In Witness Whereof, the Servicer and I have executed this Agreement.
> _____
> Servicer
>
> By:_____
>
> _____
> Date

PageID 55.  Yet no one from Seterus signed its signature line, which remains glaringly blank. From this, the intentions—at least of one party, Seterus—appear unequivocal.

Moreover, mortgage agreements are typically of "that class" usually found signed in their own right (not via a cover letter), as the parties' own history of entering into mortgage agreements suggests.  *Shawd*, 90 N.W.2d at 453.  Mortgage agreements also have "many details," and involve large amounts of money, which further obligates their precise compliance

with the statute of frauds. *Id*. Accordingly, we find the state of frauds inquiry in this case to be a matter of law falling squarely within our purview.

State and federal courts to have considered cases similar to Trombley's have consistently held that an action to enforce a mortgage modification lacking an authorized signature was barred under the statute of frauds. *Huntington Nat'l Bank v. Daniel J. Aronoff Living Trust*, 853 N.W.2d 481, 489-90 (Mich. Ct. App. 2014); *see also Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 954 (6th Cir. 2014) (citing *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 928 (6th Cir. 2013) (recognizing that Michigan law prohibits actions against financial institutions based on unwritten and unsigned promises to modify a loan)).

Trombley asks us to consider a 1928 Michigan wills case where the court looked to the testator's intent when he failed to sign his will. *In re Thomas' Estate*, 220 N.W. 764, 765 (1928) ("The question is whether thus writing her name at the top of the will is a sufficient signing, within the meaning of the statute. The statute does not require that a will be signed at the foot or in any particular place. It may be signed anywhere, providing there is an intent to adopt the name so written as the signature to the will.") We find the case factually distinguishable and are unconvinced that we should borrow from its logic.

We are mindful that the Michigan legislature made targeted revisions to M.C.L. § 566.132(2) intended to provide heightened protection to financial institutions from disgruntled borrowers. If we must look outside the mortgage context, we find *Bonner v. Metropolitan Life Insurance*, a case dealing with life insurance beneficiaries under the Federal Employees' Group Life Insurance Act ("FEGLIA") to be more instructive. In *Bonner*, we held that the "district court could find no basis to conclude that the [contract in question] was signed given that the allotted space for a signature is clearly labeled as a signature line and glaringly left blank."

621 F.3d 530, 532 (6th Cir. 2010). We find the statutory provision at issue in this case more akin to the strict interpretation of the signature requirement under FEGLIA than a testator's signature on a will pursuant to Michigan's probate code.

Trombley's argument that the cover letter was part of the Modification is also unpersuasive. Michigan courts have recently held that it is not sufficient to show that the financial institution memorialized a portion of the agreement or reduced a preliminary understanding to writing, "nor is it sufficient to present a series of documents—some signed and others not signed—that together purport to be the agreement; rather, the proponent must present evidence that the financial institution actually agreed to the essential terms of the promise or commitment, and each of those essential terms must be accompanied by the required signature." *Huntington Nat'l Bank v. Daniel J. Aronoff Living Trust*, 853 N.W.2d 481, 489 (Mich. Ct. App. 2014). That the signed cover letter accompanied the unsigned Modification in this case does not make it sufficiently different from *Huntington*.

Moreover, if Trombley is correct that Seterus' signature line on the accompanying cover letter was intended to bind Seterus to the Modification, the blank lines for a signature block on the Modification would be pointless. While it is possible, in the realm of our imagination, to infer that Seterus intended to be bound by the Modification based on signing a cover letter, we find it hard to ignore a more probable inference—one expressly contemplated by the text of the agreement: that if Seterus had intended to be bound by the Modification, it would have signed the blank lines of the earmarked signature block, rather than a cover letter accompanying the Modification.

Another recent district court decision is equally instructive. *See Helmus v. Chase Home Fin., LLC*, 890 F. Supp. 2d 806, 813 (W.D. Mich. 2012) (holding that statute of frauds barred

breach of contract claim because "the TPP was not signed by an authorized representative of Chase" even though the cover letter was signed "Sincerely, CHASE HOME FINANCE LLC"). In contrast, Trombley cites no authority to support such an argument, but simply takes issue with "*Helmus* and its progeny." [3] Appellant's Br. at 33.

We find the district court's interpretation and application of M.C.L. § 566.132(2) to be consistent with the goals of statutory construction. *Motycka v. Gen. Motors Corp.*, 669 N.W.2d 292, 294 (Mich. Ct. App. 2003) (finding that the primary goal of statutory construction is to ascertain and give effect to the intent of the legislature, and instructing that statutory language should be construed reasonably and in agreement with the statute's purpose). As discussed, the statute's purpose was to prevent fraud or the opportunity for fraud, and to protect financial institutions.

Adopting Trombley's argument would discourage financial institutions from providing letter instructions to help borrowers navigate complicated mortgage documents. A less benign consequence would be dispensing with a signature requirement entirely on a contract as long as some accompanying piece of paper reflected the name of the would-be signatory. We decline to adopt an outcome that would undermine Michigan's statute of frauds and therefore hold that Trombley's claims are barred under M.C.L. § 566.132(2).

B.

We next examine Trombley's promissory estoppel claim. Under Michigan law, these claims are barred by the same statute of frauds as contract claims. *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000) (M.C.L. § 566.132(2) "preclude[s] all actions for the enumerated promises and commitments, including actions for promissory

---

[3] Notably, Trombley signed her own name in the appropriate space provided at the end of the Modification, rather than where Seterus' "signature" appeared on the cover letter.

estoppel."); *see also Blackward Properties, LLC v. Bank of Am.*, 476 F. App'x 639, 641 (6th Cir.

2012). Accordingly, Trombley's promissory estoppel claim was properly dismissed.

## C.

Lastly, in order to bring an equitable action to quiet title under M.C.L. § 600.2932, Trombley has the burden of showing: "(a) the interest [she] claims in the premises; (b) the interest the [Appellees] claim[ ] in the premises; and (c) the facts establishing the superiority of [her] claim." Mich. Ct. R. 3.411(B)(2); *see also Khadher v. PNC Bank, N.A.*, 577 F. App'x 470, 477-78 (6th Cir. 2014). In this case, Trombley's quiet-title claim is predicated on her breach of contract and promissory estoppel claims. Having found that Trombley's breach of contract and promissory estoppel claims fail, we hold that her quiet title claim also cannot be sustained.

## IV.

For the foregoing reasons, we **AFFIRM** the district court's order dismissing the Complaint.