THOMAI v MIBA HYDRAMECHANICA CORPORATION

Docket No. 310755. Submitted November 5, 2013, at Detroit. Decided
November 14, 2013, at 9:05 a.m. Leave to appeal sought.

Naum and Zhulieta Thomai brought an action in the Macomb
Circuit Court, John C. Foster, J., against MIBA Hydramechanica
Corporation and two unknown corporations, seeking damages for
injuries sustained by Naum Thomai while operating a grooving
machine during his employment by MIBA. Plaintiffs alleged a
claim premised on gross negligence, an intentional-tort claim, and
a claim for loss of consortium. Following the denial of MIBA's first
motion for summary disposition, plaintiffs filed an amended
complaint, alleging a single intentional-tort claim to the effect
that, by requiring Naum to work with a machine that MIBA knew
was continually dangerous and certain to injure him, MIBA's
actions amounted to an intentional tort within the exception to the
exclusive-remedy provision of the worker's compensation act,
MCL 418.131(1). The court then denied MIBA's second motion for
summary disposition in order to allow plaintiffs time to conduct
what it characterized as "limited discovery." MIBA then refused to
answer some of plaintiffs' requests for admissions or to allow
plaintiffs to inspect and photograph the machine. MIBA then
sought, and was granted, a protective order that plaintiffs could
not photograph or inspect the machine. The order also limited
plaintiffs' scope of discovery. The court then granted MIBA's third
motion for summary disposition on the basis that plaintiffs had
failed to support their intentional-tort claim by showing that the
machine was defective, that anyone other than Naum had been
injured or nearly injured while operating the machine, or that
MIBA's management knew about any alleged defect. Plaintiffs
appealed the dismissal of their complaint.

The Court of Appeals *held*:

1. If plaintiffs properly plead a claim that falls within the
exception to the worker's compensation act's exclusive-remedy
provision, the trial court has jurisdiction to hear that claim and the
claim would also necessarily meet the minimum requirements to
avoid dismissal under MCR 2.116(C)(8).

2. A deliberate act can be one of commission or omission. An employer's failure to remedy a continuously operative dangerous condition can satisfy the "deliberate act" requirement for an intentional tort under the intentional-tort exception to the exclusive-remedy provision of the worker's compensation act if the omission occurs along with the intent to injure. A plaintiff, in order to establish a claim that falls within the exception, must plead (and eventually be able to prove) that the employer engaged in a deliberate act with a specific intent to injure. An employer has the intent to injure when the employer acts or fails to act with the particular purpose of inflicting an injury upon his or her employee. A plaintiff may prove that his or her employer had the intent to injure through circumstantial evidence or through direct evidence that one of the employer's agents acted or failed to act with that intent. A plaintiff, in order to establish an employer's intent in the absence of direct evidence, must plead and be able to prove that the employer deliberately acted or failed to act and did so with actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. A plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do. An employee may prove that his or her employer knew that the employee was certain to be injured when the evidence shows that the employer subjected the employee to a continuously operative dangerous condition that it knew would cause an injury, yet refrained from informing the employee about the dangerous condition so that the employee was unable to take steps to avoid injury. Evidence of mere negligence is insufficient to show willful disregard.

3. A plaintiff seeking to bring a claim under the intentional-tort exception to the exclusive-remedy provision of the worker's compensation act must plead with a sufficient degree of precision to reasonably inform the defendant of the nature of the intentional tort and the basis for establishing the requisite intent. The plaintiffs' allegations were sufficient to give MIBA reasonable notice that plaintiffs were asserting an intentional tort under the intentional-tort exception. Plaintiffs adequately alleged MIBA's intent to injure. Plaintiffs gave MIBA sufficient information for it to take a responsive position. The trial court erred by holding that plaintiffs had to allege or prove that other persons had been injured or nearly injured while operating the machine in the past. Evidence of a prior injury or incident is not an element of an intentional-tort claim stated under MCL 418.131(1). Although evidence of prior incidents may permit an inference that the

employer had actual knowledge, a plaintiff is not limited to proving actual knowledge through such incidents. Plaintiffs adequately pleaded a claim asserting the existence of an intentional tort within the exception provided under MCL 418.131(1). The trial court erred to the extent that it dismissed plaintiffs' complaint under MCR 2.116(C)(4) and (8).

4. In the absence of good cause, a trial court abuses its discretion when it prevents the discovery of relevant evidence. Because the trial court limited plaintiffs' ability to conduct discovery under a mistaken belief of law, it necessarily abused its discretion.

5. The trial court also abused its discretion by limiting plaintiffs' ability to discover information that was directly relevant to a matter at issue in the case or reasonably calculated to lead to the discovery of admissible evidence without making the necessary findings under MCR 2.302(C).

6. The trial court abused its discretion by limiting the scope of plaintiffs' ability to depose MIBA's employees, managers, and supervisors. The trial court erred by concluding that plaintiffs had no general right to discover records or information that might bear on MIBA's knowledge concerning the hazards posed by the machine and whether it was certain to injure its operator. Because the erroneous protective order precluded plaintiffs from conducting discovery, the trial court erred by granting MIBA's motion for summary disposition under MCR 2.116(C)(10).

7. The trial court's protective order and order granting summary disposition must be vacated and its decision to dismiss plaintiffs' claim must be reversed. The matter must be remanded to the trial court for further proceedings.

Reversed in part, vacated in part, and remanded.

1. COURTS — CIRCUIT COURTS — WORKER'S DISABILITY COMPENSATION ACT — INTENTIONAL-TORT EXCEPTION.

A circuit court has jurisdiction to hear a properly pleaded claim that falls within the intentional-tort exception to the exclusive-remedy provision of the Worker's Disability Compensation Act (MCL 418.131[1]).

2. WORKER'S DISABILITY COMPENSATION ACT — INTENTIONAL-TORT EXCEPTION — DELIBERATE ACTS — INTENT TO INJURE.

An employer's failure to remedy a continuously operative dangerous condition can satisfy the "deliberate act" requirement for an intentional tort under the intentional-tort exception to the exclusive-remedy provision of the Worker's Disability Compensa-

tion Act if the omission occurs along with the intent to injure; an employer has the intent to injure when the employer acts or fails to act with the particular purpose of inflicting an injury upon the employer's employee; a plaintiff may prove that his or her employer had the intent to injure through direct evidence that one of the employer's agents acted or failed to act with that intent; an employer's intent may also be proved through circumstantial evidence that the employer deliberately acted or failed to act with actual knowledge that an injury was certain to occur and willfully disregarded that knowledge (MCL 418.131[1]).

3. WORKER'S DISABILITY COMPENSATION ACT — INTENTIONAL-TORT EXCEPTION — INJURIES CERTAIN TO OCCUR.

An injury is certain to occur for purposes of the intentional-tort exception to the exclusive-remedy provision of the Worker's Disability Compensation Act when no doubt exists with regard to whether it will occur; a plaintiff may prove that his or her employer knew that the plaintiff was certain to be injured by evidence that the employer subjected the plaintiff to a continuously operative dangerous condition that it knew would cause an injury yet refrained from informing that plaintiff so that the plaintiff was unable to take steps to keep from being injured (MCL 418.131[1]).

4. WORKER'S DISABILITY COMPENSATION ACT — INTENTIONAL-TORT EXCEPTION — PLEADING.

A plaintiff seeking to plead a claim under the intentional-tort exception to the exclusive-remedy provision of the Worker's Disability Compensation Act must plead with a sufficient degree of precision to reasonably inform the defendant of the nature of the intentional tort and the basis for establishing the requisite intent (MCL 418.131[1]).

5. EVIDENCE — DISCOVERY.

All information is subject to discovery, including information that will be inadmissible at trial, as long as the information sought appears reasonably calculated to lead to the discovery of admissible evidence; parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action; a trial court may limit discovery for good cause in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense; in the absence of good cause, a trial court abuses its discretion when it prevents the discovery of relevant evidence (MCR 2.302[B][1] and [C]).

*Hilborn & Hilborn* (by *Craig E. Hilborn*) and *Bendure & Thomas* (by *Mark R. Bendure*) for Naum and Zhulieta Thomai.

*Collins, Einhorn, Farrell & Ulanoff, PC* (by *Noreen L. Slank*), for MIBA Hydramechanica Corporation.

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

M. J. KELLY, P.J. In this suit to recover damages beyond those permitted under the Worker's Disability Compensation Act, see MCL 418.101 *et seq.*, plaintiffs, Naum Thomai and his wife, Zhulieta Thomai,[1] appeal as of right the trial court's opinion and order granting summary disposition in favor of defendant MIBA Hydramechanica Corporation (MIBA).[2] On appeal, Thomai argues that the trial court abused its discretion when it imposed strict limits on his ability to conduct discovery, which prevented him from discovering potentially relevant evidence to support his claim. The trial court then compounded its error, he maintains, by granting MIBA's third motion for summary disposition on the ground that Thomai did not have evidence to establish facts that would permit him to seek damages beyond those provided under the workers' compensation act. We agree that the trial court abused its discretion when it unduly restricted Thomai's ability to conduct discovery. We also agree that the trial court should not have dismissed Thomai's claim without first giving him the opportunity to conduct reasonable dis-

---

[1] For ease of reference, we will use "Thomai" to refer to Naum Thomai individually and as the representative for plaintiffs.

[2] Thomai and his wife also sued two unknown corporations—Corporations X and Y—that they believed might be MIBA subsidiaries. We shall use MIBA to collectively refer to all defendants.

covery. For these reasons, we vacate the trial court's December 2011 order restricting Thomai's ability to conduct discovery. We also reverse the trial court's decision to dismiss Thomai's claim, vacate its May 2012 order granting summary disposition in MIBA's favor, and remand to the trial court for further proceedings.

## I. BASIC FACTS

By May 2008, Thomai had been working for MIBA for a few months.[3] He operated a grooving machine that cut grooves into "friction discs" that were used in clutch and brake systems. Initially, he was expected to cut grooves in 300 discs in one shift. However, a few weeks before his injury, a maintenance man made modifications to the machine, after which Thomai was expected to produce 600 discs each shift.

In an affidavit, Thomai described a series of steps that had to be done every time he cycled the machine. Thomai averred that the machine perpetually leaked oil and that he had been instructed—as one additional step among the many that had to be performed with each cycle—to clean any oil "using the cleaning rags while the machine was running." He had to walk along the sides of the machine to check "the sliding base and rails for oil or grease." If there was oil or grease, he would stop the machine and clean it. After the machine was modified, he had to perform each step of the operation twice as fast in order to maintain production levels. Thomai averred that he told the technicians who modified the machine that the changes made the machine extremely dangerous, but "they ignored" him.

[3] We have taken these facts from Thomai's pleadings and the exhibits attached in response to MIBA's third motion for summary disposition.

In May 2008, Thomai was operating the machine as usual. He stated that he was walking along the side of the machine while it was running in preparation "to lubricate the rails" when he slipped on the oily floor. His sleeve got caught in one of the machine's "unguarded" spindles with 56 rotating circular blades and it pulled his right hand and forearm into the machine. Thomai's coworkers responded to his screaming, stopped the machine, and pulled his arm free. Thomai had to have his arm amputated near the elbow.

Thomai and his wife sued MIBA in May 2011. They alleged three claims: a claim premised on gross negligence, an intentional-tort claim, and a claim for loss of consortium. With regard to the intentional-tort claim, Thomai alleged that the machine at issue was not safe, that MIBA knew it was unsafe and knew that injuries like Thomai's injury were "certain to occur" if the machine was used in its unsafe condition, and that MIBA "willfully disregarded" the danger.

MIBA responded in June 2011 by moving for summary disposition. MIBA argued that Thomai failed to plead allegations that would entitle him to relief beyond that provided in the worker's compensation act. MIBA maintained that Thomai failed to allege that the machine was defective or in a state of disrepair, failed to allege that MIBA knew about the condition, and failed to allege that MIBA knew that it would injure someone, as required under MCL 418.131(1). It therefore asked the trial court to dismiss the complaint for lack of jurisdiction under MCR 2.116(C)(4) and for failing to state a claim on which relief can be granted under MCR 2.116(C)(8). MIBA also argued that the trial court could, in the alternative, dismiss the complaint under MCR 2.116(C)(10) because Thomai had no evidence that MIBA intended to cause his injury.

The trial court denied MIBA's motion in August 2011, but agreed that Thomai's complaint was deficient: "[Y]ou did not allege in the confines of your complaint that there were other near miss accidents that gave them notice . . . ." Accordingly, it ordered Thomai to file an amended complaint, which he did in that same month.

Thomai alleged a single tort claim in his amended complaint. He alleged that MIBA knew that the machine at issue did not have proper guards, among other safety concerns, and nevertheless required him to operate it "without proper guarding" and with knowledge that it "was certain to produce injury" because the "danger was a continuously operative dangerous condition." That is, despite MIBA's "actual knowledge" that the machine was "inadequately guarded," it required him to face the "known imminent danger which was certain to produce severe injury." By requiring him to work with a machine that it knew was continuously dangerous and certain to injure him, MIBA's actions amounted to an intentional tort within the exception to the exclusive-remedy provision under the worker's compensation act. See MCL 418.131(1).

After Thomai amended his complaint, MIBA again moved for summary disposition under MCR 2.116(C)(4), (8), and (10). MIBA argued that Thomai's allegations were still inadequate to permit recovery beyond that provided under the worker's compensation act. MIBA maintained that Thomai had to allege and be able to prove that someone other than Thomai had been injured or nearly injured by the machine at issue and that a person with some level of responsibility at MIBA knew about the prior incident. Because Thomai did not make such an allegation and, in any event, could not prove that the machine at issue had injured or nearly

injured someone else in the past, MIBA asked the trial court to dismiss the complaint.

The trial court held a hearing on MIBA's second motion for summary disposition in October 2011. The court noted that Thomai had a very high hurdle to satisfy the intentional-tort exception stated under MCL 418.131(1) and continued to accept MIBA's contention that Thomai could not establish his claim unless he had proof that there had been a prior injury or near injury. However, the trial court also acknowledged that there had been no discovery yet and Thomai had recently indicated that a mechanic had modified the machine just weeks before his injury. Given this, the trial court felt that Thomai should have the opportunity to depose the mechanic to learn about the modifications and perhaps identify whether someone had been previously injured. Accordingly, it denied MIBA's motion in order to allow Thomai time to conduct what it characterized as "limited discovery."

After defending against the two motions and finally receiving MIBA's answer, Thomai began to make discovery requests. He first submitted a request for admissions. In response, MIBA refused to answer 15 out of the 22 requests on the grounds that the requests were outside the scope of discovery; they did not "illuminate the issue of whether or not a past injury occurred in reference to the subject machine" and did not involve whether the machine had been modified or the identity of the mechanic who made the alleged modifications. For similar reasons, MIBA refused Thomai's request to inspect and photograph the grooving machine.

MIBA moved for a protective order in December 2011. MIBA argued that it needed a protective order because Thomai had repeatedly made discovery requests that did not "illuminate either of the issues to

which the court has limited discovery." MIBA stated that it had learned that Thomai was also trying to obtain copies of his workers' compensation claim from a third-party. Because Thomai had "indicated an unwillingness to abandon his current expansive pursuit of discovery" and plainly intended to conduct similarly expansive depositions, MIBA asked the trial court to issue a protective order that limited Thomai's ability to conduct discovery.

The trial court agreed. The trial court ordered that Thomai "may not inspect and or photograph the subject machine." It also stated that he may not "request" and was not "entitled to receive answers to discovery" that did not "directly relate to the identity of the mechanic at issue, alleged defects in the subject machine at the time of [Thomai's] injury or whether or not a prior injury or near injury occurred on the subject machine . . . ." It also ordered that Thomai was not "entitled to conduct a general deposition of fact witnesses." Rather, any deposition must be limited to "identifying the mechanic" and discussing any "alleged defects in the subject machine" or any other "injury or near injury" that occurred on the "subject machine."

In March 2012, MIBA again moved for summary disposition under MCR 2.116(C)(4), (8), and (10). MIBA argued that Thomai had had ample opportunity to conduct discovery and yet still had no evidence that the machine at issue was defective, that anyone else had been injured or nearly injured while operating the machine, or that management knew about any alleged defect. Accordingly, it asked the court to dismiss the complaint.

In May 2012, the trial court issued its opinion and order granting MIBA's third motion for summary disposition on each ground. The trial court explained that

Thomai had had an adequate opportunity to discover evidence to support his claim: "Procedurally, [Thomai] has been granted sufficient time to find supporting evidence for his claims, but has failed to produce material evidence in order to sustain a claim of intentional tort." Because Thomai could not establish an intentional tort, the claim was "barred by the exclusive remedy provision under MCL 418.131." The trial court also determined that Thomai should not be given an opportunity to amend his complaint because it had already allowed "amendments" and "extended dates for discovery and case evaluation, all to no avail." Accordingly, it dismissed the complaint and closed the case. This appeal followed.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly interpreted and applied statutes and court rules. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

### B. JURISDICTION AND FAILURE TO STATE A CLAIM

Because the grounds for dismissal are interrelated under the facts involved here, we shall first address whether the trial court properly dismissed Thomai's claim under MCR 2.116(C)(4) and (8). A trial court properly dismisses a claim under MCR 2.116(C)(4) when it "lacks jurisdiction of the subject matter" involved and properly dismisses a claim under MCR 2.116(C)(8) when the com-

plaint fails "to state a claim on which relief can be granted."

### 1. JURISDICTION OVER THE SUBJECT MATTER

Michigan's circuit courts are courts of general jurisdiction that "have all the power and jurisdiction possessed by English chancery courts in 1847, except 'as altered by the constitution and laws of this state . . . .' " *Bowie v Arder*, 441 Mich 23, 50; 490 NW2d 568 (1992), quoting MCL 600.601(2) before its amendment by 1966 PA 388. By granting exclusive jurisdiction over disputes concerning compensation arising under the worker's compensation act to the Worker's Compensation Agency, see MCL 418.841(1), the Legislature divested circuit courts of the authority to adjudicate those disputes. See MCL 600.605. For that reason, this Court has held that a challenge to a claim premised on the exclusive-remedy provision stated under MCL 418.131(1) constitutes a challenge to the circuit court's jurisdiction over the subject matter. See *Harris v Vernier*, 242 Mich App 306, 312-313; 617 NW2d 764 (2000). Although the Court in *Harris* discussed whether a challenge premised on the exclusive-remedy provision constituted a challenge to jurisdiction, it addressed that issue in the context of determining whether a defendant can waive a challenge to jurisdiction under MCR 2.111(F)(2); it did not address whether and to what extent the trial court in that case actually had jurisdiction over the claims as pleaded.

It is well settled that a circuit court's subject-matter jurisdiction depends on the nature of the case brought before it: "Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the

abstract power to try a case of the kind or character of the one pending." *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992). Therefore, whether the trial court has jurisdiction of the subject matter in the first instance must be determined from the pleadings. See *In re Hatcher*, 443 Mich 426, 437; 505 NW2d 834 (1993) ("We hold, however, that the probate court's subject matter jurisdiction is established when the action is of a class that the court is authorized to adjudicate, and the claim stated in the complaint is not clearly frivolous."); *Fox v Martin*, 287 Mich 147, 151; 283 NW 9 (1938) ("Jurisdiction does not depend upon the facts, but upon the allegations."); *Altman*, 197 Mich App at 472 ("Jurisdiction always depends on the allegations and never upon the facts."). Accordingly, if a plaintiff alleges facts that—on the face of the pleadings—establish a claim over which the circuit court has subject-matter jurisdiction, the court will have jurisdiction to consider the claim without regard to the truth or falsity of the allegations. *In re Hatcher*, 443 Mich at 441-442 (stating that a party's failure to produce "evidentiary facts to support an exercise of subject matter jurisdiction" is grounds to challenge the exercise of jurisdiction and not the existence of jurisdiction); *Altman*, 197 Mich App at 472 ("The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry."). Hence, the mere fact that circuit courts generally do not have jurisdiction to consider claims that fall within the ambit of the worker's compensation act does not mean that a circuit court is divested of subject-matter jurisdiction whenever a defendant successfully challenges a plaintiff's ability to provide *factual support* for a claim that falls under the exception stated in MCL 418.131(1). See *In re Hatcher*, 443 Mich at 443 ("That the evidence failed to support

the petition did not affect the jurisdiction of the court, in the proper sense of the term, to hear the cause and to make the order.") (quotation marks and citations omitted). Stated another way, if a plaintiff properly pleads a claim that falls within the exception stated under MCL 418.131(1), then the trial court has jurisdiction to hear that claim. If the plaintiff is subsequently unable to establish a question of fact regarding one or more elements of that claim, the trial court should dismiss the claim in response to a properly supported motion for summary disposition; but not because it has suddenly lost jurisdiction (it had and continues to have jurisdiction over claims falling within the exception); rather, it is required to dismiss the claim because the plaintiff was unable to establish an essential element of an otherwise proper claim. See MCR 2.116(C)(10).

Accordingly, whether the trial court in this case properly dismissed the complaint under MCR 2.116(C)(4) depends on whether Thomai properly pleaded a claim that fell within the exception stated under MCL 418.131(1). See *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 154; 551 NW2d 132 (1996) (opinion by BOYLE, J.) (stating that "it is a question of law for the court whether the facts as alleged" in the complaint are sufficient to meet the intentional-tort exception, but whether the "facts alleged are in fact true" is matter for the jury). Whether Thomai successfully pleaded such a claim also implicates the trial court's decision to dismiss under MCR 2.116(C)(8). A trial court should grant a motion to dismiss under MCR 2.116(C)(8) only when the "claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citation omitted). If Thomai properly pleaded a claim that fell within the exception

to the worker's compensation act's exclusive-remedy provision, the trial court had jurisdiction to hear that claim and the claim would also necessarily meet the minimum requirements to avoid dismissal under MCR 2.116(C)(8).

### 2. THE EXCEPTION TO THE EXCLUSIVE REMEDY

The Legislature determined that an employee's right to recover benefits under the worker's compensation act "shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease." MCL 418.131(1). Accordingly, if an employee's injury falls within the scope of the worker's compensation act, the employee may not recover damages from the employer beyond those provided in the act. *Szydlowski v Gen Motors Corp*, 397 Mich 356, 358; 245 NW2d 26 (1976). However, the Legislature created an exception to the exclusive remedy:

> The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. [MCL 418.131(1).]

Our Supreme Court has recognized that a deliberate act can be one of commission or omission. *Travis*, 453 Mich at 169 (opinion by BOYLE, J.).[4] Therefore, an employer's failure to remedy a continuously operative dangerous condition can satisfy the "deliberate act"

---

[4] Although only one other justice joined Justice BOYLE's opinion in full, three other justices agreed that Justice BOYLE properly stated the test for establishing an intentional-tort exception under the worker's compensation act. See *Travis*, 452 Mich at 191-192.

requirement if the omission occurs along with the intent to injure. *Id.* In order to establish a claim that falls within this exception, a plaintiff must plead (and eventually be able to prove) that the employer engaged "in a deliberate act (commission or omission) with a specific intent to injure." *Id.* at 172. An employer has the intent to injure when the employer acts or fails to act with "the particular purpose of inflicting an injury upon his [or her] employee." *Id.*

A plaintiff may prove that his or her employer had the intent to injure through direct evidence that one of the employer's agents acted or failed to act with that intent. But an employer's intent can also be proved through circumstantial evidence. *Id.* at 173. In order to establish an employer's intent in the absence of direct evidence, a plaintiff must plead and be able to prove that the employer deliberately acted or failed to act and did so with "actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." MCL 418.131(1). By using the term "actual knowledge," the Legislature meant that it would be insufficient to establish the requisite intent through constructive, implied, or imputed knowledge; as such, it is insufficient to establish the intent to injure through allegations that the "employer should have known, or had reason to believe, that injury was certain to occur." *Travis*, 453 Mich at 173 (opinion by BOYLE, J.). "A plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do." *Id.* at 173-174.

A plaintiff must also plead and eventually be able to prove the very high standard that the employer knew that the injury was certain to occur. An injury is certain

to occur when "no doubt exists with regard to whether it will occur." *Id.* at 174. Whether something is certain to occur does not depend on "the laws of probability"; accordingly, evidence that "one out of ten persons will be injured if exposed to a particular risk, is insufficient to prove certainty." *Id.* In order to meet the certainty requirement, a plaintiff must establish that his or her employer not only knew about the dangerous condition but was also "aware that injury is certain to occur from what the actor does[.]" *Id.* at 176. A plaintiff may prove that his or her employer knew that the actor was certain to be injured when the employer "subjects [the] employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured . . . ." *Id.* at 178. Finally, the Legislature's use of the phrase "willfully disregarded" underscores the fact that evidence of mere negligence is insufficient. *Id.* at 178-179.

### 3. PLEADING THE EXCEPTION

In Michigan the primary function of a pleading "is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993). Because plaintiffs "cannot know in advance exactly what the proofs will establish," the court rules only require a plaintiff to provide "reasonable notice of the claims made, in sufficient detail only that there be no misleading of either party nor a denial to him of information necessary to a fair preparation and presentation of his case." *Jean v Hall*, 364 Mich 434, 437; 111 NW2d 111 (1961). A plaintiff need only plead "the specific allega-

tions necessary *reasonably* to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]" MCR 2.111(B)(1) (emphasis added). Notwithstanding these liberal standards, the degree of specificity may vary with the complexity of the claim. See *Kincaid v Cardwell*, 300 Mich App 513, 529; 834 NW2d 122 (2013). Because the intentional-tort exception provided under MCL 418.131(1) is quite narrow, a plaintiff must plead with a sufficient degree of precision to reasonably inform the defendant of the nature of the intentional tort and the basis for establishing the requisite intent.

In his amended complaint, Thomai alleged that—among other dangers involved at the work site—the machine at issue did not have adequate guards on it and that MIBA had actual knowledge of that fact and "failed" or "refused" to rectify the danger. Moreover, MIBA "intentionally and willfully disregarded and ignored the clear and present danger" and required Thomai to operate the machine with "an inadequately staffed job [and] without proper guarding[.]" It also "refrained from informing [Thomai] about the dangerous condition of the grooving machine," which prevented him from taking "steps to keep himself from being injured." Under these conditions, he further alleged, MIBA knew that the inadequately guarded machine posed a "continuously operative dangerous condition" and knew that an injury was certain to occur if Thomai operated the machine under the identified conditions. Finally, Thomai alleged that, by requiring him to work with a machine that MIBA knew was dangerous and certain to injure him, MIBA's actions amounted to an intentional tort within the exception to the exclusive-remedy provision of the worker's compensation act.

These allegations were sufficient to give MIBA reasonable notice that Thomai was asserting an intentional tort under MCL 418.131(1). *Jean*, 364 Mich at 437. Thomai gave MIBA notice that his claim was premised on the failure to remedy a dangerous condition: the inadequately guarded grooving machine. Contrary to MIBA's contention in the trial court, Thomai did not have to establish that the machine was defective or in a state of disrepair; he had to allege that the machine was dangerous and had to reasonably identify what made it dangerous. See *Travis*, 453 Mich at 169 (opinion by BOYLE, J.) (stating that the intentional-tort exception applies to an employer's failure to "remedy a dangerous condition"). Thomai also adequately alleged MIBA's intent to injure; he alleged that MIBA actually knew the machine was inadequately guarded and knew that injury was certain to occur and yet willfully ignored that knowledge. He maintained that—without adequate guards and other safety measures—the machine constituted a continuously operative dangerous condition. Although Thomai did not identify the specific supervisory or managerial employee who had the requisite knowledge that an injury would follow from the failure to remedy the dangerous condition, we do not believe that Thomai had the obligation to identify a specific manager or supervisor at this early stage in the litigation; rather, the identity of the manager or supervisor was a matter for discovery. By informing MIBA of his theory concerning MIBA's intent, Thomai gave MIBA sufficient information to take a responsive position. *Stanke*, 200 Mich App at 317. Finally, Thomai did not have to allege or prove that other persons had been injured or nearly injured while operating the machine in the past because a prior injury or incident is not an element of an intentional-tort claim stated under MCL 418.131(1). See *Travis*, 453 Mich at 174 (opinion by

BOYLE, J.). Although evidence of prior incidents may permit an inference that the employer had actual knowledge, a plaintiff is not limited to proving actual knowledge through such incidents.

Thomai adequately pleaded a claim asserting the existence of an intentional tort within the exception provided under MCL 418.131(1); therefore, the trial court erred to the extent that it dismissed Thomai's complaint under MCR 2.116(C)(4) and (8).

### C. FACTUAL SUPPORT AND DISCOVERY

We shall next address whether the trial court properly dismissed Thomai's complaint under MCR 2.116(C)(10). Thomai argues that the trial court erred when it granted summary disposition under MCR 2.116(C)(10), in part, because the trial court improperly prevented him from conducting reasonable discovery. In so doing, he maintains, the trial court made it impossible for him to marshal evidence to support his claim. We agree that the trial court's decision to limit Thomai's ability to conduct discovery is inextricably connected to the propriety of its decision to dismiss under MCR 2.116(C)(10). This Court reviews a trial court's decision to limit discovery for an abuse of discretion. *Holman v Rasak*, 486 Mich 429, 436, 448 n 10; 785 NW2d 98 (2010). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden*, 461 Mich at 120. A party may be entitled to summary disposition under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact . . . ." The moving party must first identify the matters about which it believes there are no

genuine issues and support its claim with affidavits, depositions, admissions, or other documentary evidence. *Barnard Mfg*, 285 Mich App at 369. If the moving party properly supports its motion, the burden shifts to the nonmoving party to come forward with evidence to establish the existence of a genuine issue of disputed fact. *Id.* at 370.

Because a motion under MCR 2.116(C)(10) tests a party's ability to factually support a claim, a trial court should not decide the motion when the parties have not yet had an opportunity to conduct discovery. See *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009) (stating that a decision under MCR 2.116(C)(10) is generally premature if discovery has not been completed). Whether a motion for summary disposition under this rule would be premature depends on "whether further discovery stands a fair chance of uncovering factual support for the litigant's position." *Crider v Borg*, 109 Mich App 771, 772-773; 312 NW2d 156 (1981).

Here, the trial court determined that Thomai had had adequate time to conduct discovery. Thomai did have several months within which to conduct discovery. However, before he could begin discovery, Thomai was compelled to defend against two motions for summary disposition. And, during the hearing on MIBA's second motion for summary disposition, the trial court suggested that Thomai should be limited to discovery on a narrow class of issues. The trial court subsequently entered a protective order that restricted Thomai's ability to conduct discovery in the weeks leading to MIBA's third motion for summary disposition. Therefore, before we can determine whether the trial court properly dismissed Thomai's claim on the ground that he failed to present evidence to establish a disputed

question of fact, we must first determine whether the trial court's decision to limit Thomai's discovery fell within the range of reasonable and principled outcomes. *Smith*, 481 Mich at 526.

"This state has a strong historical commitment to a far-reaching, open, and effective discovery practice." *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 36; 594 NW2d 455 (1999). To that end, the parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . including the existence, description, nature, custody, condition, and location of books, documents, other tangible things, or electronically stored information and the identity and location of persons having knowledge of a discoverable matter." MCR 2.302(B)(1). Indeed, all information is subject to discovery, including information that will be inadmissible at trial, as long as "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *Harrison v Olde Fin Corp*, 225 Mich App 601, 614; 572 NW2d 679 (1997).

Trial courts do have the authority to limit discovery. MCR 2.302(C). But that discretion is not unlimited: a trial court may enter a protective order on a motion "and for good cause" in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Id.* In the absence of good cause, a trial court abuses its discretion when it prevents the discovery of relevant evidence. *Szpak v Inyang*, 290 Mich App 711, 715-716; 803 NW2d 904 (2010) (stating that generalized fears that discovery will lead to the intimidation of witnesses is insufficient to warrant a protective order limiting discovery of otherwise relevant evidence); *Harrison*, 225 Mich App at 614-616 (holding that the trial court abused its discre-

tion when it precluded the plaintiff from discovering reports on the ground that the reports were irrelevant without first inspecting the reports in camera to determine if they were subject to discovery).

Here, the trial court issued a protective order that severely limited Thomai's ability to conduct discovery. The trial court entered this sweeping order without making the necessary findings: it did not find that "justice require[d]" the order to protect MIBA from annoyance, embarrassment, oppression, or undue burden or expense. MCR 2.302(C). The trial court further did not address whether any specific requests were "relevant to the subject matter involved in the pending action . . . ." MCR 2.302(B)(1). Instead, the trial court apparently entered the order under a mistaken belief that Thomai could only proceed with his case if he could first identify someone who had been injured in a prior accident involving the same machine or who was nearly injured in an incident involving the same machine. As we have already noted, Thomai did not have to prove that there was a prior accident or near accident with the same machine in order to establish that MIBA knew the machine constituted a dangerous condition that was certain to cause injury. See *Travis*, 453 Mich at 174 (opinion by BOYLE, J.). Rather, Thomai could rely on any relevant evidence that might permit an inference that MIBA actually knew that the machine constituted a dangerous condition that was certain to injure. Because the trial court limited Thomai's ability to conduct discovery under a mistaken understanding of the law, it necessarily abused its discretion. *Gay v Select Specialty Hosp*, 295 Mich App 284, 294; 813 NW2d 354 (2012).

The trial court also abused its discretion by limiting Thomai's ability to discover information that was directly relevant to a matter at issue in the case or

reasonably calculated to lead to the discovery of admissible evidence without making the necessary findings. See MCR 2.302(C). The trial court specifically precluded Thomai from inspecting and photographing the grooving machine despite the fact that the primary issue in this case was whether the grooving machine constituted a dangerous condition. It is difficult to see how Thomai would be able to prove this threshold issue without being able to inspect the machine. Absent an inspection, Thomai had to accept MIBA's representations concerning the machine: he could not independently establish whether it had been modified, could not independently assess the safety measures that were in place to protect the operator, could not study and photograph the machine in order to facilitate a consultation with an expert, and could not even verify if the guards on the machine were actually inadequate. It is similarly difficult to contemplate how permitting such an inspection would result in annoyance, embarrassment, oppression, or undue burden or expense given that this is precisely the kind of efficient and inexpensive discovery that was intended to allow the narrowing of issues for trial. *Ewer v Dietrich*, 346 Mich 535, 542; 78 NW2d 97 (1956) (stating that the discovery rules should be "liberally construed" to "promote the discovery of the true facts and circumstances of a controversy" and narrow and clarify the issues for trial).

The trial court similarly abused its discretion by limiting the scope of Thomai's ability to depose MIBA's employees, managers, and supervisors. The trial court effectively precluded Thomai from eliciting any information from MIBA's managers and supervisors concerning whether they actually knew that the grooving machine was dangerous and certain

to injure someone, which was plainly at issue in this case. While the trial court might have been justified in issuing a protective order to prevent Thomai from generally deposing MIBA's high-ranking personnel as part of a fishing expedition, it did not justify the limitations that it imposed on the basis that Thomai had other, less obtrusive or burdensome, ways to obtain the information. See *Alberto v Toyota Motor Corp*, 289 Mich App 328, 336-343; 796 NW2d 490 (2010). Instead, it apparently decided to limit the scope of Thomai's discovery on the mistaken belief that the only evidence that Thomai could use to establish MIBA's intent was evidence that someone had been previously injured or nearly injured on the machine at issue.

Finally, we cannot agree with the trial court's apparent conclusion that Thomai had no general right to discover records or information that might bear on MIBA's knowledge concerning the hazards posed by the grooving machine and whether it was certain to injure its operator. The trial court offered no reason to justify a blanket protective order against such discovery and there is no record evidence that such a prophylactic measure was warranted.

On this record, we must conclude that the trial court abused its discretion when it entered a sweeping protective order limiting Thomai's right to conduct reasonable discovery without making the findings required under MCR 2.302(C) and while operating under a mistaken understanding of the law. *Gay*, 295 Mich App at 294. Because this erroneous protective order essentially precluded Thomai from conducting discovery, we must also conclude that the trial court erred when it granted MIBA's motion for summary disposition under MCR 2.116(C)(10). Absent the improper limitation,

there was a reasonable probability that further discovery would uncover factual support for Thomai's position; accordingly, summary disposition was premature. *Crider*, 109 Mich App at 772-773.

### III. CONCLUSION

Thomai alleged sufficient facts to establish an intentional-tort claim under MCL 418.131(1). Therefore, the trial court erred to the extent that it dismissed Thomai's complaint under MCR 2.116(C)(4) and (8). The trial court also abused its discretion when it entered a sweeping protective order limiting Thomai's ability to conduct reasonable discovery without complying with MCR 2.302(C) and while laboring under a mistake of law. Because the erroneous protective order prevented Thomai from conducting discovery that stood a reasonable probability of uncovering factual support for his claims, the trial court's decision to grant summary disposition under MCR 2.116(C)(10) was premature. Consequently, we vacate the trial court's December 2011 protective order. We also reverse the trial court's decision to dismiss Thomai's claim, vacate its May 2012 order granting summary disposition in MIBA's favor, and remand to the trial court for further proceedings.

Reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Thomai may tax his costs. MCR 7.219(A).

CAVANAGH and SHAPIRO, JJ., concurred with M. J. KELLY, P.J.