GOLDMAN v. CENTURY INSURANCE COMPANY.

SAME v. SCOTTISH UNION & NATIONAL INSURANCE COMPANY.

1. INSURANCE—FIRE PROTECTION—BUILDINGS—FIXTURES—COALYARD.
    Insurance protection of described buildings, as defined in fire insurance policy, extended to "permanent fixtures, stationary scales and elevators" belonging to and constituting "a permanent part of said building" and did not extend to outside fixtures and apparatus used in coalyard.

2. REFORMATION OF INSTRUMENTS — INSURANCE — MISTAKE — EVIDENCE.
    Contracts of insurance may be reformed on the ground of mutual mistake of fact but proofs of mistake must be of substantial and material fact, shared by and common to both parties, and established beyond cavil by clear and satisfactory evidence.

3. SAME—FIRE INSURANCE POLICY—EVIDENCE.
    Evidence presented in suit to reform a fire insurance policy after fire loss so as to extend coverage to outbuildings, fixtures and contents used in conduct of retail coal business on ground of mutual mistake *held*, insufficient to establish mistake as to extent of coverage.

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 29 Am Jur, Insurance §§ 241, 257; 45 Am Jur, Reformation of Instruments §§ 47–49, 116–119.
[4] 29 Am Jur, Insurance § 157.
[6, 7] 20 Am Jur, Evidence § 253 *et seq.*

4. INSURANCE—FIRE PROTECTION—EVIDENCE—INTENT—MEETING OF THE MINDS.

The intent of the parties with respect to extent of coverage of a contract of fire insurance is evidenced by the resulting policy, hence, it is clearly admissible as evidence of the meeting of the minds, a matter that is judged by objective standards and not by the unexpressed thoughts and understanding of one of the parties.

5. SAME—COVERAGE—EVIDENCE.

Insurance policies, purchased by plaintiff insureds after fire loss, were admissible in suit to determine insureds' intent as to their coverage under defendants' policies, herein sought to be reformed after fire.

6. EVIDENCE—INFERENCES.

All facts are admissible in evidence which afford reasonable inferences or throw any light upon the matter contested.

7. SAME—ADMISSIBILITY—DISCRETION OF COURT.

The question of whether evidence offered is too remote from the transaction to be admissible is one for the trial court to determine, and will not ordinarily be disturbed on appeal.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted October 8, 1958. (Docket Nos. 12, 13, Calendar Nos. 47,025, 47,026.) Decided December 2, 1958.

Bill by Bernie Goldman and Leon Goldman against the Century Insurance Company, Limited, a foreign corporation, to determine certain property covered by insurance policy and, if necessary, to reform policy so as to include it under fire loss. Similar action against Scottish Union & National Insurance Company, a foreign corporation. Cases consolidated for trial and appeal. Bills dismissed. Plaintiffs appeal. Affirmed.

*Dann, Rosenbaum & Bloom* and *William Weiss,* for plaintiffs.

*Davies & Moesta,* for defendants.

Smith, J. This case* involves a fire insurance policy. The first question is one of interpretation, whether or not certain protection was afforded under the policy. If not, the second question arises, whether or not the policy should be reformed to include such protection. The plaintiffs, Goldman brothers, are the insured. The defendants are the insurers.

The Goldman brothers (hereafter referred to as the Goldmans) conducted a coal business on Garfield avenue in the city of Detroit. The questions presented with respect to the policy require that the premises be described in some detail. Two street addresses are involved. At 1817–1819 Garfield was located a 1-story, composition roof, brick building occupied principally for manufacturing purposes, and at 1823–1845 Garfield a 2-story, fireproof building used principally for mercantile and dwelling purposes. It was from this latter building that the Goldmans operated a retail coal business.

Behind the buildings so located was a coalyard. It consisted of wooden bins for storage, fences, driveways, electrical loading machinery, and other appurtenances. In this area, on August 4, 1951, occurred a fire which damaged the bins, fences, gates, and the roofs of outbuildings. All the damage was thus in the coalyard itself. There was no damage either to the 1-story building at 1817 Garfield or the 2-story building at 1845 Garfield.

The first question relates to the coverage under the policy as written. We quote from the Goldmans' summary thereof:

---

* Actually we have here 2 policies and 2 cases, each against a different insurance company (the risk being divided), consolidated for trial and, by stipulation, "deemed expedient" to be "presented to the Supreme Court upon a single record." For convenience we will refer both to the cases and to the policies in the singular.

"The policies of insurance in question describe the insured premises as follows:

"1. Five thousand ($5,000) dollars on the 1-story composition roof, brick building, occupied as principally for manufacturing purposes situated at 1817 Garfield avenue, Detroit, Mich.

"2. Ten thousand ($10,000) dollars on the 2-story roof fireproof building, occupied as principally for mercantile and dwelling purposes, situated at 1823–45 Garfield ave., Detroit, Michigan."

Obviously the word "building" is the critical word in the above. We find it defined with particularity in the following language in the policy:

"'Building'—On building, including foundations (except as excluded below), plumbing, electric wiring, electric sound, communication, stationary heating, lighting, ventilating, refrigerating, air-conditioning and vacuum cleaning apparatus and fixtures, boilers, machinery used for the service of the building only, all only while contained therein; ovens, kilns, furnaces, retorts, lehrs, forges, cupolas and driers, of brick construction or brick encased, resting on independent foundations built from ground, all only while contained therein; awnings, signs and metal smokestacks (except as provided below), screens, storm doors and windows if the property of the owner of the building and belonging to the described building, while attached thereto or stored therein or in other buildings on the premises; also all permanent fixtures, stationary scales and elevators, belonging to and constituting a permanent part of said building.  *  *  *

"'Liability is also assumed under this item for loss to such personal property, including materials belonging to the insured and not otherwise covered, as pertains only to the sole use or service of the building, all while contained then or attached thereto, but said liability for loss to such personal property and materials shall not exceed 1% of the amount of the item covering on building.' "

The Goldmans assert that the damage in the coal-yard is covered by the policy on the buildings. In support thereof the Goldmans argue that "such descriptions include fixtures used in conjunction with the mercantile purposes described in the policy." And, also, that "the buildings described by their addresses and by their purposes should include fixtures and attached fences which belong to and are used in conjunction with the mercantile purposes at the described address and without which the then existing use of premises could not be continued." What is overlooked in this is that it is not enough, for coverage, that property serve the "mercantile purposes" at the described addresses. So far as insurance protection is concerned the policy requires that the appurtenances of the business, *e.g.*, "permanent fixtures, stationary scales and elevators" must belong to and constitute "a permanent part of said building." Such was not here the situation and the cases cited by the Goldmans in support of their argument differ both in the language of the policies involved, and the factual situations presented to the degree that they are either not persuasive or valueless as precedent.

But, continue the Goldmans, even should the policy be so construed it does not end the matter, for, they assert, "it was intended and contemplated" by both parties that the policy should cover the "above-described outbuildings, appurtenances, wiring, coal-bins, et cetera," and, hence, that the policy should be reformed to express such intention. No fraud has been charged. The grounds for reformation are asserted to be in the mutual mistake of the parties.

We do not hestitate, it is true, to reform contracts, including contracts of insurance, where there has been a mutual mistake of fact. *Health Delivery Service* v. *Michigan Mutual Liability Co.,* 257 Mich 482. But we are keenly aware that, after a loss suf-

fered, regret and remorse may readily convert what may have been at best an unexpressed contemplation into an express (and ignored) command. Thus it is that the proofs of mistake must be of substantial and material fact, shared by and common to both parties, and, above all, established beyond cavil by clear and satisfactory evidence. *Emery* v. *Clark,* 303 Mich 461; see *Urick* v. *Burge,* 350 Mich 165 (reformation of lease). *Cf., Consumers Power Co.* v. *County of Muskegon,* 346 Mich 243.

Turning, then, to the proofs offered on this point, we find the Goldmans, at times, unequivocal in their insistence that everything inflammable (*i.e.,* "that which is burnable") on the premises was intended by them to be covered, and if such was not the coverage in the policy it was due to mistake, partially attributable to inexperience on the part of the agent involved. They assert, also, that the insurer knew ("or should have known from the situation") what coverage the Goldmans contemplated, and that evidence of the Goldmans' thoughts and understandings should have been admitted to establish their intent.

The testimony proffered by the Goldmans themselves is not altogether consistent with their asserted intention to insure everything inflammable on the premises. Thus, with reference to the concrete building, one of the "outbuildings" to which reference has been made, the roof of which was damaged, Bernie Goldman, himself, testified as follows:

"In 1948, when Mr. Kramer was out to see me, the frame and concrete building was being used as a garage and also for storage of steel tanks by our tenant. The day I took Mr. Kramer out in the yard that building was almost full of those metal tank heads.

"*Q.* And you told Mr. Kramer at that time, why should you insure that building; it is all concrete, and

there is nothing in it but metal and it can't burn; didn't you tell him that?

"*A.* That is right."

On this matter the testimony of Mr. Kramer, the insurance agent, is as follows:

"There was a building in the back that I pointed out to Bernie and we walked back there to see what it was and he pointed out to me that that building in the back was entirely of brick, or whatever you call it there, concrete and that there was nothing there that would burn, and that the contents of the building, I remember had these empty new oil drums stored there. I pointed out to him that the roof could burn and he said he wasn't concerned about that because there was nothing there that could burn under the roof. The contents weren't of a nature that would burn and neither would the building burn and beyond that we didn't discuss anything. We did not discuss the wooden bins or the wooden fence."

We note, also, the finding of the chancellor that this building was excluded from coverage in the new policies issued in 1951. Additional light upon the intent of the Goldmans as to insurance coverage may be gained from the fact that the previous policies upon the property were "in like amount to that now involved" and employed "the same phraseology as to the property insured as the policy upon which suit is brought." Moreover, testified Mr. Leon Goldman on cross-examination, "I did not read the policy when it came. I knew what insurance coverage we had under the old policies before Mr. Kramer came out to see me and was satisfied with the old insurance and wanted the same thing with the new insurance."

We agree with the trial chancellor that such testimony is far from the clear and convincing proof of the mutual mistake required for reformation. It falls short, indeed, of a clear and convincing showing of a unilateral mistake.

We agree, also, that evidence of the unexpressed thoughts and understanding of the Goldmans was inadmissible to establish their intent. The Goldmans assert that such denial "shatters the whole concept of a 'meeting of the minds.'" They read the figure of speech too literally. To say, as we do, that a contract requires a "meeting of the minds" is only a figurative way of saying there must be mutual assent. This we judge by an objective standard, looking to the expressed words of the parties and their visible acts. In looking at such words and acts the insurance policies purchased by the Goldmans after the fire were clearly admissible as bearing upon the Goldmans' intent respecting their insurance coverage. As we said in *Detroit Iron & Steel Co.* v. *Detroit Gray Iron Foundry Co.,* 240 Mich 677, 680.

" 'By relevancy is meant the logical relation between proposed evidence and a fact to be established. All facts are admissible in evidence which afford reasonable inferences or throw any light upon the matter contested. * * * The question whether evidence offered is too remote from the transaction to be admissible is one for the trial court to determine, and will not ordinarily be revised on appeal.' "

The additional errors asserted are controlled by what has been held heretofore. There is no error and the trial chancellor is affirmed. Costs to appellees in each case.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.