HUNTINGTON NATIONAL BANK v DANIEL J. ARONOFF
LIVING TRUST

Docket No. 309761. Submitted January 8, 2014, at Detroit. Decided
March 27, 2014. Approved for publication June 3, 2014, at 9:00
a.m. Leave to appeal denied, 497 Mich ___.

Huntington National Bank brought an action in the Oakland Circuit
Court against the Daniel J. Aronoff Living Trust, Daniel J. Aronoff,
Arnold Y. Aronoff, and others, seeking to enforce several notes, letters
of credit, and guaranties. Daniel and Arnold Aronoff owned several
businesses and financed their business activities in part through
loans from plaintiff. In response to plaintiff's lawsuit, defendants
claimed that plaintiff had breached a $5 million loan commitment
made to them in October 2007. Defendants asked the court to offset
plaintiff's claims by the amount that defendants would have been
able to repay if not for that alleged breach. The court, Nanci J. Grant,
J., determined that MCL 566.132(2) barred any defense premised on
an attempt to enforce plaintiff's alleged oral promise to loan defen-
dants money on terms other than those that the parties later reduced
to writing in February 2008. The court granted summary disposition
in favor of plaintiff and denied, in part, defendants' motion for
reconsideration. The court agreed with defendants that the court's
original order should not have included an award of attorney fees
because no hearing had been held on the reasonableness of the fees.
The parties came to an agreement concerning the amount of attorney
fees and filed a stipulation with the court. The court then entered an
amended judgment. Defendants appealed.

The Court of Appeals *held*:

1. The proponents of a loan commitment have the burden to prove
its existence. In order for there to be an enforceable agreement
between the parties, there must be mutual assent to be bound. Courts
judge whether there was a meeting of the minds from the objective
evidence. Under MCL 566.132(2), no one may bring an action against
a financial institution if the action seeks to enforce a promise or
commitment to lend money by the financial institution unless the
promise or commitment is in writing and signed with an authorized
signature by the financial institution. By requiring that the promise
or commitment, as opposed to some other document, must be in

writing and have an authorized signature, it is evident that the Legislature intended to provide financial institutions with a greater degree of protection than that afforded generally under MCL 566.132(1). Accordingly, the party seeking to enforce a promise or commitment by a financial institution must present evidence that the promise or commitment itself was reduced to writing and properly signed. It is not sufficient to show that the financial institution memorialized a portion of the agreement or reduced a preliminary understanding to writing and then later orally agreed to proceed under that framework, nor is it sufficient to present a series of documents—some signed and others not signed—that together purport to be the agreement; rather, the proponent must present evidence that the financial institution actually agreed to the essential terms of the promise or commitment, and each of those essential terms must be accompanied by the required signature. In this case, defendants presented evidence that suggested that plaintiff had reached a preliminary agreement in October 2007 to loan them $5 million, but the evidence also showed that the parties never finalized that agreement because plaintiff decided not to proceed with the closing as originally discussed. Because defendants did not provide any evidence that plaintiff executed a written agreement, with an authorized signature, to provide a loan under the terms that they claimed were negotiated in October 2007, the trial court did not err when it concluded that their defense amounted to an action to enforce a promise or commitment to loan money that was barred under MCL 566.132(2).

2. A grant of summary disposition might be premature if the party opposing the motion has not had a reasonable opportunity to conduct discovery. Whether summary disposition is premature depends on whether further discovery stands a fair chance of uncovering factual support for the litigant's position. Defendants asserted that further discovery might reveal that plaintiff had prepared internal documents for the October 2007 loan commitment that might satisfy MCL 566.132(2). But the trial court correctly determined that internal documents could not satisfy the statute because an internal document could not have induced reliance. The trial court's grant of summary disposition was not premature, and defendants' other assertions of error do not warrant relief.

Affirmed.

STATUTE OF FRAUDS — PROMISES OR COMMITMENTS BY FINANCIAL INSTITUTIONS — ENFORCEMENT.

Under MCL 566.132(2), no one may bring an action against a financial institution if the action seeks to enforce a promise or

commitment to lend money by the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution; the party seeking to enforce a promise or commitment by a financial institution must present evidence that the promise or commitment itself was reduced to writing and properly signed; internal documents cannot be used to satisfy the statute because an internal document cannot induce reliance; an affirmative defense may constitute an action to enforce a promise or commitment to loan money to which MCL 566.132(2) applies.

*Plunkett Cooney* (by *Jeffrey C. Gerish, Douglas C. Bernstein,* and *Kenneth M. Mattson*) for plaintiff.

*Allan Falk, PC* (by *Allan Falk*), for defendants.

Before: STEPHENS, P.J., and M. J. KELLY and RIORDAN, JJ.

M. J. KELLY, J. In this suit to enforce several notes, letters of credit, and guaranties, defendants Daniel J. Aronoff; Arnold Y. Aronoff; their related trusts, the Daniel J. Aronoff Living Trust and the Arnold Aronoff Revocable Trust; and their business entities, Eagle Park Associates Limited Partnership, Tampa Associates Limited Partnership, The Star Group, Inc., Edison Farms, Inc., and Strategic Equities, Inc.,[1] appeal by right the trial court's judgment granting plaintiff Huntington National Bank's motion for summary disposition. On appeal, Daniel Aronoff, Arnold Aronoff, and the Aronoff entities argue that the trial court erred by granting Huntington's motion for summary disposition and, in the alternative, erred by failing to explicitly include a provision for adjusting interest on the unpaid debt in the judgment. Because we conclude there were no errors warranting relief, we affirm.

---

[1] For convenience, we shall collectively refer to the trusts, partnerships, and corporations as the Aronoff entities.

## I. BASIC FACTS

Daniel and Arnold Aronoff own and operate various businesses. They financed their business activities in part through loans from Huntington. Eagle Park obtained a loan from Huntington for more than $14 million in December 2001, which Arnold Aronoff, his trust, Tampa Associates, and Strategic Equities guaranteed. Tampa Associates, under its former name, obtained a loan of more than $7 million from Huntington in December 2003. Arnold Aronoff, his trust, Eagle Park, and Strategic Equities guaranteed that loan. Daniel and Arnold Aronoff and their trusts took out a loan for more than $13 million from Huntington in February 2009. Tampa Associates, Eagle Park, The Star Group, Glades Enterprises, and Edison Farms each guaranteed that loan. Arnold Aronoff and Tampa Associates secured a standby letter of credit from Huntington in favor of the City of Novi. The City of Novi drew on the letters of credit in January 2010 and Arnold Aronoff and Tampa Associates became liable to Huntington for the outstanding balance.

After defaults on the notes and letters of credit, Huntington demanded payment from the obligors and guarantors of each note and letter of credit, but was unable to obtain full payment on the debts. In May 2010, Huntington sued Daniel Aronoff, Arnold Aronoff, and the Aronoff entities. By May 2011, it had amended its complaint to include all the outstanding notes and letters of credit involved. In its second amended complaint, Huntington asked the trial court to enter a judgment of more than $27 million each against Arnold Aronoff, his trust, Eagle Park, Tampa Associates, and Strategic Equities. It also asked for a judgment of almost $15 million each against Daniel Aronoff, his trust, the Star Group, Glades Enterprises, and Edison

Farms. Huntington also asked the trial court to award it interest, costs, and attorney fees.

In answer to Huntington's claims, defendants alleged numerous affirmative defenses. In relevant part, they alleged that Huntington's claims were barred because it was impossible to perform after the advent of "unprecedented and unforeseen economic conditions" affecting business in Michigan and Florida. They also alleged that Huntington "reneged" on a $5 million loan commitment that it made to them in October 2007. They explained that Huntington's failure to meet its commitment placed them in a "distressed economic position and near insolvency." Had Huntington fulfilled the loan commitment, they further stated, the debt would have been significantly reduced. For that reason, they asked the trial court to offset Huntington's claims by the amount that they would have been able to repay had Huntington not "breach[ed]" its obligations under the October 2007 loan commitment. They also claimed that Huntington's actions with regard to the October 2007 loan commitment amounted to fraud or misrepresentation, which negated their own liability under the notes, letters of credit, and guaranties.

In June 2011, Huntington moved for summary disposition under MCR 2.116(C)(9) and (10). Huntington argued that it was undisputed that defendants executed the notes, letters of credit, and guaranties at issue and failed to make the required payments under those agreements. Huntington also argued that the affirmative defenses that defendants alleged in their answer could not serve as a bar to Huntington's claims. It noted that the loan commitment allegedly made in October 2007 predated one loan and predated the amendments to others. For that reason, whatever effect that loan commitment might have had, it was superseded by

subsequent agreements. Huntington also argued that MCL 566.132(2) barred any defense arising from the alleged October 2007 loan commitment because the loan commitment was not in writing and signed by someone authorized to act on Huntington's behalf. Finally, Huntington argued that a downturn in economic conditions did not amount to a defense to the required payments. Because the undisputed evidence showed that defendants were liable for the payments required under the notes, letters of credit, and guaranties, and had no valid defense to the claims, Huntington asked the trial court to grant summary disposition and enter judgment in its favor.

In response to Huntington's motion, defendants did not directly contest the validity and amounts due under the notes, letters of credit, and guaranties. Instead, they presented evidence and argued that their inability to pay under those agreements arose from Huntington's wrongful conduct.

They presented evidence that Daniel Aronoff began to negotiate a $5 million line of credit with Huntington in June 2007. The line of credit was to be secured by the proceeds from financial institutions in Florida that Daniel and Arnold Aronoff were in the process of acquiring. Huntington purportedly approved the line of credit in a letter dated July 2007 and the parties were to close on the line of credit by the end of October 2007. However, Huntington failed to close the loan. Despite reassurances that the closing would occur and that the loan documents were being drafted, Huntington still had not closed on the line of credit by November 2007. Finally, in December 2007, Huntington informed the Aronoffs that it would not fund the loan.

Defendants claim that Huntington's refusal to close the loan led to financial distress; they were even unable

to meet their January 2008 payroll. They stated that Huntington then used their financial distress to compel them to accept a modified loan deal. The new loan was for $4.3 million rather than $5 million and required them to pledge their remaining assets as security for the loan. The parties agreed to the new loan in February 2008. Defendants presented evidence that, because they pledged the additional property as collateral for the new loan, they were unable to take advantage of other loan and sale offers.

In their answer to Huntington's motion for summary disposition, defendants argued that Huntington's refusal to meet the $5 million loan agreement in October 2007 was wrongful and proximately caused significant losses. They maintained that MCL 566.132(2) did not apply because that statute applied only to "actions" and not defenses. In any event, they explained, the documents and e-mails circulated before the proposed closing on the original commitment were sufficient to satisfy MCL 566.132(2). Because their "lender liability defense" would "fully defeat" Huntington's right to recover under the notes, letters of credit, and guaranties, they asked the trial court to deny Huntington's motion for summary disposition. Finally, in the alternative, defendants argued that summary disposition was premature because the parties had not yet concluded discovery.

In November 2011, the trial court issued its opinion and order granting Huntington's motion. The trial court first noted that defendants did not "dispute the existence of the loans, the terms, the payments, or that they are in default." Instead, the court explained, they argued that they would not have defaulted but for Huntington's failure to abide by its promise to loan them an additional $5 million in October 2007. The trial

court, however, determined that MCL 566.132(2) barred any defense premised on an attempt to enforce Huntington's oral promise to loan them money on terms other than those that the parties ultimately reduced to writing in February 2008. The trial court examined the evidence and concluded that, before February 2008, Huntington had not obligated itself to make the disputed loan in a properly signed promise or commitment:

> To be sure, these documents suggest that the parties negotiated a $5 million loan in 2007, and that [Huntington's] representatives orally committed to closing the loan. The documents do not, however, constitute a written "promise or commitment" sufficient to satisfy the statute of frauds. The July 18 letter, for example, explicitly notes that [Huntington] is only "prepared to discuss a possible extension of credit for your operation," and that "the terms outlined above are not all-inclusive, but merely reflect our discussions to date, are subject to change and will be supplemented by our standard loan requirements and documentation." Thus, that document does not constitute a "promise or commitment" by [Huntington] to lend money, as it suggests only that [Huntington] was willing to consider such a loan, but had not yet committed to it. Nor could the November 29 "closing checklist" be considered a "promise or commitment" by [Huntington] to lend money, as it does not even describe the transaction in question, much less identify its terms. Rather, that document is simply a list of items that [the borrowers] must provide before a closing can occur. Finally, the closing documents themselves do not satisfy the statute since they are not signed by an authorized representative of [Huntington].

Because the undisputed evidence showed that Huntington never actually committed to make the disputed loan in writing, the trial court concluded that defendants could not rely on the loan negotiations to establish a defense to Huntington's claims.

The trial court also rejected the contention that MCL 566.132(2) does not apply to defenses. The trial court determined that it would elevate form over substance to allow a party to indirectly enforce an oral agreement as a defense when the statute of frauds would preclude that party from directly enforcing the oral promise in a claim. The trial court similarly rejected the notion that a grant of summary disposition would be premature, ruling that there was no reason to believe that further discovery would reveal documents beyond those already discussed. After discussing the arguments and evidence, the trial court concluded that the undisputed evidence showed that defendants had breached the agreements at issue and were liable to Huntington in the amounts established in Huntington's motion for summary disposition.

The trial court entered its order and judgment in favor of Huntington in December 2011. The judgment provided that Arnold Aronoff, his trust, Eagle Park, Tampa Associates, and Strategic Equities had to pay Huntington approximately $28.5 million and that Daniel Aronoff, his trust, the Star Group, Glades Enterprises, and Edison Farms had to pay Huntington approximately $15.3 million. The judgment further stated a collective maximum amount of liability for defendants and ordered that their individual liability must be reduced by the amount of any payment or collateral that Huntington received from any of them toward the debt for the underlying note or letter of credit. The judgment also provided for costs and attorney fees.

In January 2012, defendants moved for reconsideration of the trial court's judgment. They argued that the trial court palpably erred when it rejected their defense as barred under MCL 566.132(2) and when it deter-

mined that there was no fair likelihood that further discovery would yield support for their defense. They also argued that the judgment should have included a provision that adjusted the amounts owed by reducing the interest on the debt for amounts paid before the judgment and that the trial court should have given them an opportunity to amend their answer. Finally, they argued that the trial court erred when it ordered them to pay attorney fees without first granting them a hearing to determine whether the fees were reasonable.

Later that same month, the trial court denied the motion for reconsideration in part. The trial court rejected defendants' efforts to revisit the evidence that they submitted to establish that Huntington had committed to loan them $5 million in October 2007 and to raise new evidence and new claims or defenses. It did, however, consider the potential that summary disposition may have been premature. The trial court indicated that it wanted to further consider their argument that the statute of frauds could be satisfied through "internal documents which were never shared with the other party . . . ." It also invited Huntington to respond to their argument that the judgment should have included a provision for adjusting interest and should not have included attorney fees without first conducting a hearing.

In March 2012, the trial court entered its final order resolving defendants' motion for reconsideration. The trial court first examined MCL 566.132(2) and noted that it required a written promise or commitment in contradistinction to the requirements stated under MCL 566.132(1), which can be satisfied with a memorandum. Because a promise is a manifestation of an intent by the promisor that justifies reliance by the promisee, the trial court concluded

that MCL 566.132(2) requires proof that that the party seeking to enforce the promise or commitment actually received the writing signed by an authorized person. Accordingly, further discovery to see if Huntington generated an internal document signed by an authorized person would not be of use to defendants. The trial court also determined that the judgment adequately permitted defendants to seek adjustments to the interest owed. Finally, the trial court agreed that the judgment should not have included an award of attorney fees given that the trial court had not yet held an evidentiary hearing on the reasonableness of the fees. For these reasons, the trial court denied the motion for reconsideration as to every issue except the amount of attorney fees to be included in the final judgment.

The parties later came to an agreement on the amount of attorney fees and filed a stipulation with the trial court. In April 2012, the trial court entered an order amending the judgment to reflect the stipulated amount.

Defendants then appealed in this Court.

## II. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW

Defendants first argue that the trial court erred when it granted Huntington's motion for summary disposition. Specifically, they contend that the trial court erred when it determined that MCL 566.132(2) barred their defense premised on Huntington's allegedly wrongful refusal to abide by the terms of the loan negotiated in October 2007. In the alternative, they argue that the trial court's decision was premature because there was a fair likelihood that further discovery would have established their defense. Finally, they

argue that the trial court should have permitted them to amend their answer to revise their defense or add a defense or counterclaim premised on the October 2007 loan commitment.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court "correctly selected, interpreted, and applied the relevant statutes." *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013).

### B. LENDER LIABILITY DEFENSE

When in the trial court, defendants did not contest the validity of the agreements underlying Huntington's claims against them. Instead, they argued that those claims were unenforceable as a result of, or should be offset by, Huntington's "lender liability" arising from its failure to abide by the terms of a loan that they negotiated with Huntington in October 2007. It is not clear that Michigan recognizes a defense whereby a borrower can avoid liability under a lawfully made note by pleading and proving that the lender engaged in wrongful conduct unrelated to that note. From their allegations, however, it is clear that defendants' "lender liability" defense is more aptly characterized as a breach of contract counterclaim framed as an affirmative defense. That is, defendants alleged and argued that Huntington entered into a valid and binding agreement to loan them $5 million in October 2007 and that Huntington's breach of that agreement caused losses that nearly or fully offset their obligations under the notes, letters of credit, and guaranties at issue in Huntington's complaint. Thus, in order to establish this

"defense," defendants must be able to prove that the October 2007 loan commitment amounted to a legally enforceable agreement.

As the proponents of this alleged loan commitment, defendants have the burden to prove its existence. *Hammel v Foor*, 359 Mich 392, 400; 102 NW2d 196 (1960). In order for there to be an enforceable agreement between the parties, there must be "mutual assent" to be bound—that is, the parties must have a "meeting of the minds" on all the essential elements of the agreement. *Goldman v Century Ins Co*, 354 Mich 528, 535; 93 NW2d 240 (1958) ("To say, as we do, that a contract requires a 'meeting of the minds' is only a figurative way of saying there must be mutual assent."); *Dodge v Blood*, 307 Mich 169, 176; 11 NW2d 846 (1943) (stating that a contract is not valid unless the parties have a meeting of the minds on all essential points of the agreement). Courts judge whether there was a meeting of the minds from objective evidence: from "the expressed words of the parties and their visible acts." *Goldman*, 354 Mich at 535. Moreover, when negotiating the terms, the acceptance of the final offer must be substantially as made; if the purported acceptance includes conditions or differing terms, it is not a valid acceptance—it is a counteroffer and will not bind the parties. See *Harper Bldg Co v Kaplan*, 332 Mich 651, 655-656; 52 NW2d 536 (1952). And Michigan courts will not lightly presume the existence of an enforceable contract because, "regardless of the equities in a case, the courts cannot make a contract for the parties when none exists." *Hammel*, 359 Mich at 400.

In addition to these basic elements of a contract claim, defendants had to comply with the applicable statute of frauds. The Legislature long ago provided that certain types of agreements, contracts, or promises

are "void" unless in writing and signed by the party to be charged with the agreement. See MCL 566.132(1). Typically, a party can meet the requirements of a statute of frauds by presenting a written document or documents that individually or collectively summarize the essential elements of the alleged agreement. See *Fothergill v McKay Press*, 361 Mich 666, 676; 106 NW2d 215 (1960) ("Normally a memorandum need be only that. It is sufficient if the obligations of each party may be determined from it. It need not have the minutiae of a contract."). Consequently, under MCL 566.132(1), the party seeking to enforce an agreement need not produce a written copy of the agreement, as long as the party can produce some written evidence that establishes the agreement's essential terms. Although a party might normally be able to satisfy the requirements of MCL 566.132(1) by presenting a written summary of an otherwise oral agreement, even though the proponent does not have an actual written agreement, the case at issue here does not involve the requirements provided under MCL 566.132(1). Rather, it involves the requirements stated under MCL 566.132(2).

In 1992, Michigan's Legislature decided to provide greater protection to financial institutions from potentially fraudulent or spurious claims by disgruntled borrowers. See 1992 PA 245. To that end, the Legislature provided that no one may bring an "action" against "a financial institution" if the action seeks to "enforce" a promise or commitment by the financial institution "unless the promise or commitment is in writing and signed with an authorized signature by the financial institution." MCL 566.132(2). This provision applies to a "promise or commitment"—as alleged here—to "lend money." MCL 566.132(2)(a). Although this Court has operated on the assumption that a memorandum may be sufficient to meet the requirements stated under

MCL 566.132(2), it has not directly construed the requirements stated under MCL 566.132(2). See *Barclae v Zarb*, 300 Mich App 455, 470-471; 834 NW2d 100 (2013) (stating that the statute of frauds can generally be satisfied with "a writing" in light of admitted facts and extrinsic evidence, but then concluding that the evidence was insufficient because it did not establish that there was mutuality of agreement, which is not normally a contractual term).[2]

As the trial court recognized, it is noteworthy that the Legislature did not provide that a party may meet the writing requirement of MCL 566.132(2) with evidence of a "note or memorandum of the agreement, contact, or promise", as it did under MCL 566.132(1). Instead, it barred any "action" to enforce a promise or commitment to lend money unless the "promise or commitment" is in writing and signed with an authorized signature. MCL 566.132(2). By requiring that the "promise or commitment"—as opposed to some other document—must be in writing and have an authorized signature, it is evident that the Legislature intended to provide financial institutions with a greater degree of protection than that afforded generally under MCL 566.132(1). See *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 550; 619 NW2d 66 (2000) (construing MCL 566.132(2) and concluding that the Legislature's use of the term "action" was meant to provide an "unqualified and broad ban" to protect financial institutions from any action to enforce a covered promise or commitment, however labelled). Accordingly, the party seeking to enforce a promise or

---

[2] The court in *Barclae* did not construe MCL 566.132(2), but instead assumed that the caselaw construing MCL 566.132(1) applied equally to the facts of *Barclae*. It then determined that the evidence was insufficient to satisfy the statute of frauds because the evidence failed to establish mutuality of agreement. Given these limitations, we find it inapposite.

commitment must present evidence that the promise or commitment itself was reduced to writing and properly signed. It is not, therefore, sufficient to show that the financial institution memorialized a portion of the agreement or reduced a preliminary understanding to writing and then later orally agreed to proceed under that framework, nor is it sufficient to present a series of documents—some signed and others not signed—that together purport to be the agreement; rather, the proponent must present evidence that the financial institution actually agreed to the essential terms of the promise or commitment, and each of those essential terms must be accompanied by the required signature.

Here, defendants presented evidence that tended to suggest that Huntington had reached a preliminary agreement to loan them $5 million in about October 2007. However, the undisputed evidence also showed that the parties never finalized that agreement because Huntington decided not to proceed with the closing as originally discussed. Instead it renegotiated the terms and ultimately provided the loan that the parties agreed to in February 2008. Because defendants did not provide any evidence that Huntington executed a written agreement, with an authorized signature, to provide a loan under the terms that they claimed were negotiated in October 2007, the trial court did not err when it concluded that their "lender liability" defense amounted to an "action" to enforce a promise or commitment to loan money that was barred under MCL 566.132(2).

Even assuming that defendants could meet the requirements stated under MCL 566.132(2) with memoranda and other documentary evidence tending to show that Huntington agreed to loan them money under terms that were different from those found in the

February 2008 agreement, the trial court still did not err when it concluded that the written evidence presented to the court was insufficient to establish the essential terms of the agreement. Under MCL 566.132(1), the proponent's written evidence must still be sufficient to establish the terms without the need to fill in gaps with oral testimony: "Basically, such a writing must contain all of the essential terms of the contract with the degree of certainty which would obviate any necessity for parol evidence. There should be no cause for inquiring beyond the writing to identify the terms and conditions of the agreement." *Ass'n of Hebrew Teachers v Jewish Welfare Federation*, 62 Mich App 54, 59; 233 NW2d 184 (1975).

Here, defendants relied heavily on the checklist prepared by Huntington for the proposed closing in October 2007. While this closing checklist refers to documents that would presumably contain the terms for the proposed loan, it plainly does not include sufficient detail to satisfy the statute of frauds by itself. The checklist does not define the interest rate, does not provide for periodic payments, does not specify the term of the loan, and does not indicate whether it refers to a revolving line of credit or a fixed loan. Indeed, the checklist clearly identifies several critical documents—including the loan agreement itself—as being in the draft stage. Similarly, as the trial court correctly noted, the July 2007 letter from Huntington cannot serve to fill in these missing gaps because it clearly identifies the terms as proposals for discussion on a *possible* extension of credit. And defendants did not present any other signed documents that might establish these missing elements. In addition, despite claiming that the primary difference between the proposed loan commitment from October 2007 and the agreement entered into in February 2008 involved the collateral requirements, defen-

dants did not provide a signed document to establish the collateral requirements required under the terms of the loan that the parties purportedly agreed to in October 2007. Because defendants failed to establish the essential terms of the October 2007 loan commitment, the trial court properly determined that MCL 566.132(2) barred them from trying to enforce that commitment in the present action.

### C. FURTHER DISCOVERY AND CONTRACT CLAIMS

Defendants also argue that, even if the checklist and other evidence that they presented in response to Huntington's motion for summary disposition did not satisfy the requirements stated under MCL 566.132(2), summary disposition was nevertheless premature because further discovery might have disclosed evidence that would satisfy the statute. As this Court recently reiterated, a grant of summary disposition may be premature if the party opposing the motion has not had a reasonable opportunity to conduct discovery. See *Thomai v MIBA Hydramechanica Corp*, 303 Mich App 196, 215-216; 842 NW2d 417 (2013). "Whether a motion for summary disposition under this rule would be premature depends on 'whether further discovery stands a fair chance of uncovering factual support for the litigant's position.' " *Id.* at 216, quoting *Crider v Borg*, 109 Mich App 771, 772-773; 312 NW2d 156 (1981).

The trial court initially determined that defendants had been given sufficient time to conduct discovery before Huntington's motion. However, on reconsideration, defendants argued that further discovery might reveal that Huntington prepared internal documents for the original loan closing, which might satisfy MCL 566.132(2). We, however, agree with the trial court's

determination that such internal documents cannot satisfy the statute. With MCL 566.132(2), the Legislature limited a party's ability to enforce a "promise or commitment" by a financial institution to those situations when the promise or commitment is in writing and signed with an authorized signature. By referring to a promise or commitment that is itself in writing and signed, the Legislature plainly intended to limit enforcement to a promise or commitment that was actually made. A purely internal document cannot satisfy the requirements stated under MCL 566.132(2) because such a document could not induce reliance. See *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008) (stating that a promise is a manifestation of an intent to act or refrain from acting that justifies the promisee in understanding that a commitment has been made). Consequently, we agree with the trial court's determination that extending discovery to permit defendants to try to discover an internal document to establish the elements of their "lender liability" defense would not aid them in establishing their factual position. See *Thomai*, 303 Mich App at 216. The trial court's grant of summary disposition was not premature.

For similar reasons, we also agree with the trial court's determination that defendants would not benefit from an opportunity to amend their answer to better allege their "lender liability" defense or allege a counterclaim. In both cases they rely on Huntington's purported breach of the October 2007 loan commitment, but, as already explained, they failed to present any evidence that the October 2007 loan commitment met the requirements stated under MCL 566.132(2). Because that statute would bar any defense or counterclaim premised on the October 2007 loan commitment,

the proposed amendments would be futile. See *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997).

The claim made by defendants—that Huntington's February 2008 loan of $4.3 million lacked adequate consideration—also necessarily fails. Their argument presupposes that the October 2007 loan commitment for $5 million was enforceable and, for that reason, the subsequent loan constitutes a modification of that loan without adequate consideration. Even assuming that parties cannot modify an existing agreement without additional consideration, see *Adell Broadcasting Corp v Apex Media Sales, Inc*, 269 Mich App 6, 11; 708 NW2d 778 (2005) ("The fact that parties consider it to their advantage to modify their agreement is sufficient consideration."), in the absence of evidence that the terms negotiated in October 2007 actually bound the parties, this claim cannot be sustained; the agreement to loan $4.3 million to defendants clearly constituted adequate consideration for their promise to repay and pledge of collateral.

The trial court did not err when it granted Huntington's motion for summary disposition.

### III. RECONSIDERATION

Defendants further maintain that the trial court erred when it refused to amend the judgment to more specifically provide for the adjustment of interest after their motion for reconsideration. This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.).

In order to establish the right to relief, the party bringing the motion for reconsideration must establish that the trial court made a palpable error and a different disposition would result from correction of the error. *Luckow Estate v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011); MCR 2.119(F)(3). The trial court examined the interest issue and determined that it did not warrant reconsideration because the judgment adequately covered this eventuality. Defendants have not presented any evidence that the failure to include a provision to adjust the interest has actually prejudiced them or might prejudice them in the future—that is, they did not demonstrate that the failure to include the requested provision constituted palpable error. Indeed, they acknowledge that Huntington has stated that such an interest adjustment would be appropriate under the current judgment, but nevertheless argue that the judgment must be amended because they would rather not rely on Huntington's "good graces" in the event of a dispute. Given that the trial court has retained jurisdiction to enforce the judgment and presumably handle any such disputes, we cannot conclude that the trial court abused its discretion when it refused to amend the judgment to proactively address potential future disagreements over the application of credits. See *Smith*, 481 Mich at 526.

IV. DUE PROCESS

Defendants finally argue that the trial court's decision to grant summary disposition must be reversed because the trial court violated their rights to due process by treating them unfairly. Specifically, they contend that the trial court demonstrated its bias by allowing Huntington to file briefs that exceeded the page limit; by allowing Huntington to file an extra brief,

which even included new exhibits, while criticizing their own lawyer for doing the same; by allowing Huntington to amend its complaint, but refusing to allow them to amend their answer; and generally by maligning their lawyer.

On appeal, defendants claim that this evidence of bias constitutes structural error. However, they do not support this claim of error by meaningful discussion of the authorities and record—they merely cite a few federal criminal cases establishing a criminal defendant's right to a fair trial and list the trial court's actions that they feel show evidence of bias. By failing to properly address this issue on appeal, defendants have abandoned this claim of error. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

In any event, after having examined the record, we conclude that defendants have not established bias warranting relief. Generally, this Court will presume that the trial judge is impartial and the party asserting otherwise bears a heavy burden to overcome that presumption. *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). The primary evidence of bias in this case concerns the trial court's exercise of its discretion to control the proceedings and the trial court's rulings, neither of which can generally be used to establish bias even if erroneous. See *id*. Further, a trial judge's remarks, which are hostile to or critical of the parties, their cases, or their counsel, ordinarily will not establish a disqualifying bias. *Id*. at 566-567. The record here simply does not establish that this case is one of those extreme cases warranting relief. See *id*. at 567.

### V. CONCLUSION

The trial court did not err when it concluded that the undisputed evidence showed that Huntington was en-

titled to summary disposition; defendants did not dispute their liability under the terms of the notes, lines of credit, and guaranties and failed to support their proposed "lender liability" defense with evidence that Huntington breached a written agreement to loan them $5 million in order to extort more favorable terms at a later date. In addition, the trial court did not err when it determined that defendants would not benefit from further discovery or be able to cure the deficiencies in their position through amendment of their answer. Finally, there were no other errors warranting relief.

Affirmed. As the prevailing party, Huntington may tax its costs. MCR 7.219(A).

STEPHENS, P.J., and RIORDAN, J., concurred with M. J. KELLY, J.