STATE OF MICHIGAN
COURT OF APPEALS

---

CITY OF HIGHLAND PARK,

　　　　　Plaintiff-Appellant,

v

COUNTY OF WAYNE,

　　　　　Defendant-Appellee.

UNPUBLISHED
February 22, 2018

No. 334203
Wayne Circuit Court
LC No. 15-014322-CZ

---

Before: RIORDAN, P.J., and K. F. KELLY and GADOLA, JJ.

PER CURIAM.

In this action alleging the breach of an actual or implied contract, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant. We affirm.

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

Plaintiff demanded payment from defendant for nearly $12 million after allegedly discovering that plaintiff had been improperly paying for service and treatment of the storm water runoff from portions of the Davison Freeway Service Drive and McNichols Road that fell within plaintiff's city limits but were under defendant Wayne County's jurisdiction. When defendant refused to pay, plaintiff brought this litigation alleging, after amendment, one count each of breach of contract, quantum meruit, and implied contract. Plaintiff, at least in part, in its causes of action relied on alleged violations of the Revenue Bond Act of 1933 (RBA), MCL 141.101 *et seq.*, and the Federal Water Pollution Control Act, commonly known as the Clean Water Act (CWA), 33 USC 1251 *et seq*.

Defendant moved for summary disposition of those claims, arguing, among other things, that plaintiff's breach of contract claim relied on documents that did not actually form a contract; plaintiff's request for equitable relief with respect to the Davison Service Drive could not be maintained because there was an express contract allowing defendant to have free service from plaintiff; plaintiff did not have standing to bring suit under the CWA or the RBA; and storm water runoff from the relevant portion of McNichols Road never entered plaintiff's sewage system. The trial court agreed with defendant, reasoning that the contract alleged by plaintiff was not an actual contract, that the contract relied on by defendant was a contract and it barred plaintiff's claims for equitable relief, and that plaintiff did not have standing under the statutory schemes, and services related to McNichols Road runoff were not billed to plaintiff. This appeal followed.

## II. BREACH OF CONTRACT

Plaintiff argues that the trial court erred in granting summary disposition of plaintiff's breach of contract claim in favor of defendant. We disagree.

### A. STANDARD OF REVIEW & GENERAL LAW

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), but the trial court did not indicate under which subrule it was granting the motion. However, because evidence was presented and considered outside of the pleadings, the proper grounds for granting the motion was pursuant to MCR 2.116(C)(10). See *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659 n 15; 822 NW2d 190 (2012) ("Because the circuit court considered evidence outside the pleadings when it [decided the] motion for summary disposition, we consider the circuit court's determination to be based on MCR 2.116(C)(10), as opposed to (C)(8)."). "This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Assoc*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id.* A trial court's decision regarding the existence of a contract is a question of law that we review de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

"[A] contract is an agreement between parties for the doing or not doing of some particular thing and derives its binding force from the meeting of the minds of the parties[.]" *In re Mardigian Estate*, 312 Mich App 553, 562; 879 NW2d 313 (2015) (internal quotation marks omitted). "Before a contract can be completed, there must be an offer and acceptance." *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (internal quotation marks omitted). Stated differently, "[i]n order for there to be an enforceable agreement between the parties, there must be 'mutual assent' to be bound—that is, the parties must have a 'meeting of the minds' on all the essential elements of the agreement." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014). "Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Clark*, 309 Mich App at 394, quoting *Kloian*, 273 Mich App at 452. "Moreover, when negotiating the terms, the acceptance of the final offer must be substantially as made; if the purported acceptance includes conditions or differing terms, it is not a valid acceptance[.]" *Huntington Nat'l Bank*, 305 Mich App at 508.

### B. ANALYSIS

In 1992, plaintiff, defendant, and the Michigan Department of Transportation (MDOT) commenced negotiations, but never completed, for the expansion of the Davison Freeway ("the project") within plaintiff's city and defendant's county limits. The proposed project also included plans to rebuild the Davison Service Drive. Eventually, the negotiations stalled, with plaintiff and defendant disagreeing regarding important terms of the contract. On April 30,

1992, MDOT issued a letter to plaintiff and defendant, the purpose of which was "to identify [] issues, to clearly state [MDOT's] position, and to propose a three-party agreement which would fix the rights and responsibilities of the parties." The letter also reflected plaintiff's concern regarding "Storm Water Charges." MDOT opined that the governmental unit with jurisdiction over the roadway should bear the cost of treating the storm water that ran off that road. In that vein, MDOT stated that it would pay for treatment of the storm water runoff from Woodward Avenue and the reconstructed Davison Freeway, over which it would have jurisdiction. Meanwhile, defendant would have jurisdiction over the Davison Service Drive, so it would be responsible for storm water runoff from that road. MDOT ended the letter by encouraging plaintiff and defendant to reach an agreement so that they could obtain federal funding for the project, stating "[MDOT] is ready to meet with you to discuss these issues and to enter into a formal agreement with you in order to move this important project toward completion."

Plaintiff and defendant issued a letter as a joint response to MDOT on June 10, 1992. By its own language, "the intent of [the] letter [was] to present a combined response to [MDOT's] letter." With respect to storm water runoff charges, the parties declared that they "accept [MDOT's] position presented in [its] letter." The letter ended with the following statement: "To meet [MDOT's] time constraints in letting this project, it is suggested that a meeting be arranged to further discuss our respective positions."

Plaintiff now asserts that the 1992 exchange of letters establish a binding contract between plaintiff and defendant, which require defendant to pay for storm water runoff service and treatment for roads under its jurisdiction. Plaintiff argues that the "offer" was the original letter sent by MDOT to plaintiff and defendant, discussing the terms regarding which the parties could not agree. Meanwhile, the "acceptance" was the second letter, sent by plaintiff and defendant collectively, where defendant expressed agreement that it would be responsible for storm water runoff from its own roads. However, closer examination of those letters shows that they did not form a contract. In pertinent part, even assuming MDOT's letter was an offer, the language of the combined response plainly did not constitute an acceptance. See *id.*

The original letter from MDOT contained several different sections, only one of which was in regards to storm water runoff. In that section, MDOT stated its belief that defendant would be responsible to pay for the storm water running off the roads over which it held jurisdiction. In the combined response, defendant agreed to that statement by MDOT. However, MDOT's letter also contained a section regarding "sewers," wherein MDOT expressed that plaintiff would maintain jurisdiction over the sewers within the city boundaries. In the combined response, plaintiff requested a change to that term. Specifically, the response letter stated that "[plaintiff] requests that [MDOT] provide a maintenance free facility for a period of five years," during which "[a]ll inspections . . . would be at [MDOT's] expense." The response letter also showed disagreement regarding which governmental unit was responsible for paying for the relocation of street lights that needed to be moved for the construction, whether MDOT was responsible for providing updated traffic signals for the newly constructed roads, and whether plaintiff or MDOT had to pay for new fire hydrants along the new roadways. Lastly, the final sentence in the response letter shows that plaintiff and defendant did not have the intent to be bound by the letters, stating "it is suggested that a meeting be arranged to further discuss our respective positions."

Considering the language of the letters exchanged as a whole, it is clear that they did not create an "enforceable agreement between the parties" because there was no " 'meeting of the minds' on all the essential elements of the agreement." *Huntington Nat'l Bankt*, 305 Mich App at 508. The fact that the parties agreed to one term – that defendant would pay for storm water runoff from its roads – does not create a contract for that term only. See *id*. Michigan law is clear that, while parties are in the process of negotiating terms, as here, "if the purported acceptance includes conditions or differing terms, it is not a valid acceptance[.]" *Id*. Plaintiff and defendant's combined response suggests changes to several different terms proposed in MDOT's original letter.

Thus, the combined letter in response to MDOT's letter was not an acceptance, see *id*., and therefore, "no contract [was] formed." *Clark*, 309 Mich App at 394, quoting *Kloian*, 273 Mich App at 452. Provided that there was no contract arising out of the 1992 letters, defendant could not have breached a contract based on those letters. As such, because the 1992 letters were the only basis on which plaintiff alleged a breach of contract, the trial court properly granted summary disposition in favor of defendant on plaintiff's breach of contract claim. See *id*.

## II. IMPLIED CONTRACT & QUANTUM MERUIT

Plaintiff next asserts that the trial court erred in granting summary disposition of its claims for equitable relief in favor of defendant. We disagree, albeit for a different reason than that relied on by the trial court.

## A. STANDARD OF REVIEW & GENERAL LAW

As discussed, motions for summary disposition are reviewed de novo. *Pace*, 499 Mich at 5. Summary disposition is proper where there is no "genuine issue regarding any material fact." *Maiden*, 461 Mich at 120. "Trial court rulings regarding equitable matters are also reviewed de novo." *Karaus v Bank of NY Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012).

As an initial matter, it is important to note that plaintiff's claims for "quantum meruit" and on an "implied contract" both rely on there being a contract implied in law. To wit, this Court has held that "[t]he theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment . . . ." *NL Ventures*, 314 Mich App at 241 (internal quotation marks omitted). "An implied-in-law contract is a legal fiction 'to enable justice be accomplished' even if there was no meeting of the minds and no contract was intended." *AFT Mich v Michigan*, 303 Mich App 651, 660; 846 NW2d 583 (2014), quoting *Detroit v Highland Park*, 326 Mich 78, 100; 39 NW2d 325 (1949). Stated differently, "[a] contract will be implied in law to prevent unjust enrichment." *AFT Mich*, 303 Mich App at 660, citing *Martin v East Lansing Sch Dist*, 193 Mich App 166, 177; 483 NW2d 656 (1992).

The question, therefore, is whether defendant was unjustly enriched at plaintiff's expense. See *id*. "This Court has long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another." *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 197; 596 NW2d 142 (1999). "Whether a specific party has been unjustly enriched is generally a question of fact . . . [but] whether a claim for unjust enrichment can be maintained is a question of law[.]" *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729

NW2d 898 (2006). "A claim of unjust enrichment requires the complaining party to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus*, 300 Mich App at 22-23. The same elements are required to "to sustain a claim of quantum meruit[.]" *Morris Pumps*, 273 Mich App at 195.

For such actions, "*neither express promise nor privity between the parties* is essential." *Morris*, 460 Mich at 198 (emphasis in original), quoting *Hoyt v Paw Paw Grape Juice Co*, 158 Mich 619, 626; 123 NW 529 (1909). "The remedy is one by which the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received to ensure that exact justice is obtained." *Morris*, 460 Mich at 198 (internal quotation marks omitted). In sum, "the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Morris Pumps*, 273 Mich App at 195. This Court has held that "not all enrichment is necessarily unjust." *Landstar Express America, Inc v Nexteer Auto Corp*, 319 Mich App 192, 205; 900 NW2d 650 (2017).

## B. ANALYSIS

Assuming, without actually deciding, that the trial court erred in holding that the 1993 contract regarding the construction of the Davison Service Drive barred any equitable relief to plaintiff and that storm water runoff from the relevant portion of McNichols Road did not enter plaintiff's sewage system, we still must affirm. An application of the facts to binding case law requires a finding that defendant was not *unjustly* enriched. Plaintiff's attempt to enforce an implied contract against defendant must be barred because defendant merely benefitted from the contract between plaintiff and Detroit, via the Detroit Water and Sewerage Department (DWSD). This Court has held that, while third-parties who innocently benefit from a contract between two other parties may have been enriched, their enrichment was not unjust. *Landstar Express*, 319 Mich App at 205-206. This Court expounded upon that rule in *Karaus*:

> A third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties. . . . Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person. [*Karaus*, 300 Mich App at 24, quoting *Morris Pumps*, 273 Mich App at 196, quoting 66 Am Jur 2d, Restitution and Implied Contracts, § 32, p 628.]

In sum, an implied contract or claim for quantum meruit will not lie where a party is only enriched; the party must be *unjustly* enriched. See *Landstar Express*, 319 Mich App at 205-206.

Plaintiff entered into a contract with Detroit regarding sewage services and treatment based on the holding of a 1949 Michigan Supreme Court case. *Detroit*, 326 Mich 78. In that matter, the Michigan Supreme Court held that Detroit was permitted to "charge for use of its sewage disposal system by suburban municipalities as well as all other users, and may establish a reasonable rate for such service. Users, including suburban municipalities such as [plaintiff], must pay the established rate, subject only to the condition that such rate must be reasonable." *Id*. at 104. In 1949, Detroit was charging plaintiff $0.2161 per 1,000 cubic feet of water used. *Id*. at 86.

Without a written contract between plaintiff and Detroit and based on that Supreme Court opinion, the relationship between plaintiff and Detroit for the treatment and disposal of sewage continued until the 1980s. However, to ensure that it was treating its municipal users equally, Detroit entered into a written contract with plaintiff regarding the calculation of sewage system rates. In that agreement, plaintiff agreed to pay the rates established by Detroit under the principles of the Supreme Court's opinion and as modified by the new contract. In other words, the contract established that plaintiff pays Detroit, via DWSD, for sewage service and treatment based on the volume of water entering the system from within plaintiff's city limits. In their dealings governed by that contract, DWSD did not omit charges based on the volume of water entering the sewage system from defendant's roads. This is likely because the contract between plaintiff and Detroit does not include a clause to separate those volumes from the overall volume entering the sewage system. Instead, the contract and Supreme Court case provides that plaintiff is responsible for paying the rate charged by DWSD, based on the volume of water entering the system from within plaintiff's city limits. Because defendant Wayne County's roads are within those city limits, they were included in DWSD's calculation of plaintiff's bill. Thus, defendant was a third-party beneficiary of an agreement between plaintiff Highland Park and the City of Detroit.

It is unclear whether the contract was poorly negotiated by plaintiff, in that it did not specify that storm water runoff from defendant's roads should not be included in Detroit's calculation of plaintiff's bill, or whether DWSD was supposed to separate the volume attributable to defendant and bill it separately. In either case, under the rule provided for in *Karaus* and *Landstar Express*, defendant Wayne County's enrichment under the circumstances was not unjust. There is no evidence on the record that defendant misled plaintiff or DWSD in order to gain an advantage from their contract. If the contract just failed to include a term requiring a deduction for defendant's costs from plaintiff's bill, then defendant was not unjustly enriched because it merely "receive[d] a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties" in order to receive it. *Karaus*, 300 Mich App at 24 (internal quotation marks omitted). This Court will not imply a contract against defendant where plaintiff negotiated a contract that allowed DWSD to bill plaintiff for service and treatment of storm water runoff from roads under defendant's jurisdiction and not necessarily within plaintiff Highland Park's jurisdiction. See *id*. While defendant undoubtedly was enriched by being relieved of the duty to pay for the services provided by DWSD, that enrichment was not unjust because its enrichment only occurred due to plaintiff's action or, perhaps, inaction relative to the contract's negotiation and drafting. See *id*. As this Court has stated previously, it is not irrelevant that "plaintiff was in the best position to protect itself" from the harm regarding which it now seeks redress, by insisting upon better terms

in its contract with DWSD,. *Landstar Express*, 319 Mich App at 206. It chose not to. Whether it did so intentionally or unintentionally is not an issue before this Court.

On the other hand, if DWSD was supposed to deduct the costs attributable to defendant from plaintiff's bill, but failed to do so, then defendant still was not unjustly enriched. See *id.* at 205-206. This is because defendant cannot be found to have been unjustly enriched based on "the mere failure of performance by one of the contracting parties," when defendant "benefit[ed] from [the] contract" without performing "some misleading act" to gain that benefit. *Karaus*, 300 Mich App at 24 (internal quotation marks omitted). It would be inequitable to hold defendant responsible for the failure of DWSD to properly bill plaintiff. See *id.* In such a case, plaintiff's remedy lies against DWSD and Detroit for breach of the express contract. See *id.*[1]

In the simplest terms, there is no basis to hold defendant liable for either plaintiff's failure to negotiate a better contract with DWSD or for DWSD's breach of that express contract. See *Landstar Express*, 319 Mich App at 205-206.

### III. CONCLUSION

The trial court properly granted summary disposition of plaintiff's claims for breach of contract and equitable relief because the contract alleged by plaintiff was not a contract and defendant was not unjustly enriched. Because this outcome is dispositive of all of plaintiff's claims, all the remaining arguments by the parties have been rendered moot.

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Michael F. Gadola

---

[1] Unlike the present case, plaintiff seemingly would be better suited to bring that action against DWSD pursuant to the RBA, asserting that DWSD was requiring plaintiff to pay more than "[t]he reasonable cost and value of any service [DWSD] rendered[.]" MCL 141.118(1). Plaintiff's claim would rely on the fact that the portion of the fee attributable to storm water runoff from defendant's roads was not a "service rendered [to plaintiff] . . . by a public improvement," and therefore, should have been billed to defendant itself. MCL 141.118(1).